## WATSON *v.* BURNLEY.

1. A contract between husband and wife, providing for the wife's maintenance, made after a separation has taken place, is valid and enforceable. Upon application of this principle the first question propounded by the Court of Appeals is answered in the negative.
2. Where after a separation between husband and wife a written contract is entered into between them, under one of the terms of which it is agreed that the husband, in order to make provision for the wife for permanent alimony, obligates himself to pay to the latter a stipulated sum per month, and this is accepted by the wife in full settlement for all claims or demands for support or alimony against the husband living, or out of his estate in case of death, but it is also stipulated that, the provision being made simply and solely for the purpose of making permanent provision for the support of the wife, it is

agreed that in the event the wife should obtain a divorce and should marry again, or she should marry again in the event of the death of her husband, the provision for permanent alimony should terminate, this last-quoted stipulation, considered in the light of all the other provisions of the contract, does not have the effect of rendering the contract void as being contrary to public policy, on the ground that it appears therefrom that the same is in restraint of marriage.

No. 1723. SEPTEMBER 17, 1920.

The Court of Appeals certified to the Supreme Court the following questions (in Case No. 10507) :

" Is the following agreement void, first, as being contrary to public policy in that it provides for a divorce between the parties and dissolution of the marriage contract as one of the contingencies on which the alleged contract should be carried out; and, second, is the alleged contract void as being contrary to public policy, in that it appears therefrom that the same is in restraint of marriage, after divorce?

' Georgia, McDuffie County. This contract entered into between Mrs. Mattie Bell Watson, of the one part, and J. Durham Watson and Thomas E. Watson, of the other part :

' Witnesseth, that the said J. Durham Watson and the said Mattie Bell Watson, being husband and wife and living in a state of separation, it is agreed between them that the said J. Durham Watson, in order to make provision for the said Mattie Bell Watson for permanent alimony, obligates himself to pay to the said Mattie Bell Watson, so long as she shall live, the sum of twenty-five ($25.00) dollars per month, payable monthly on the first day of each month, and the said Mattie Bell Watson accepts said sums in full settlement of all claims or demands for support or alimony either against the said J. Durham Watson while living or out of his estate should he die, so that she shall have no further claims against the said J. Durham Watson while living and make no claims beyond said amounts of any kind against his estate in the event of his death.

' It is understood and agreed that these monthly payments are to be in no wise affected by any action by divorce which the said Mattie Bell Watson may bring against the said J. Durham Watson, and said payments to be made whether she remains the wife of the said J. Durham Watson or should procure a legal separation from him through the courts. This provision being hereby made sim-

ply and solely for the purpose of making permanent provision for the support of the said Mattie Bell Watson; but it is understood and agreed that in the event the said Mattie Bell Watson should obtain a divorce from the said J. Durham Watson and should marry again, or if the said J. Durham Watson should die and the said Mattie Bell Watson should marry again, then the provision for permanent alimony should terminate; but otherwise this provision to continue so long as the said Mattie Bell Watson should live, whether she remains the wife of the said J. Durham Watson or gets a divorce from him.

'And the said J. Durham Watson as principal, and the said Thomas E. Watson as surety, are hereby held and bound unto the said Mattie Bell Watson for the true payment of the said twenty-five ($25.00) dollars per month, as above stated, so long as the said Mattie Bell Watson shall live, subject to the contingency of her marriage as above stated, and for the true payment of which they bind themselves, their heirs, executors and administrators.

'In witness whereof, they have set their hands and seal, this 15th day of February, 1904.

'Signed, sealed and delivered in the presence of
M. W. Gross.          [Signed]

J. D. Watson (L. S.)
Thos. E. Watson (L. S.)
Mattie Bell Watson (L. S.)

Filed in office this August 13th, 1918.

W. W. Hardaway, Clerk.' "

*Samuel L. Olive* and *J. Glenn Stovall,* for plaintiff in error.
*J. B. Burnside,* contra.

Per Curiam. (After stating the certified questions.)

1. The first question propounded to this court is, whether the agreement recited is void as being contrary to public policy, in that it provides for a divorce between the parties and dissolution of the marriage contract as one of the contingencies on which the alleged contract should be carried out.

Under no fair construction of the contract can the conclusion be reached that it provides for a divorce between the parties and the dissolution of the marriage contract as one of the contingencies on which the alleged contract should be carried out. The rights of the wife, who is living separate from her husband, to

institute proceedings for divorce are in no wise to be affected by anything that she may do in regard to the institution of divorce proceedings. She is neither stimulated to bring such proceedings nor is she restrained from bringing them. Nothing in the terms of the instrument affects in any way her rights or her volition upon this subject. The separation between herself and her husband, so far as appears from the question propounded, which includes the instrument itself, is an accomplished and existing fact. In the case of *Sumner* v. *Sumner,* 121 *Ga.* 1 (48 S. E. 727), it was said: "The mere fact that the deed from Sumner to his wife was executed pursuant to a separation, and to provide a separate maintenance for the wife, did not render it invalid. 'A contract between husband and wife, made with the intention of promoting a dissolution of the marriage relation,' is contrary to public policy and void. *Birch* v. *Anthony,* 109 *Ga.* 349. But a contract providing for the wife's maintenance, made after a separation has taken place, or immediately before a separation which has already been determined upon, is valid and enforceable. *Chapman* v. *Gray,* 8 *Ga.* 341; *McLaren* v. *McLaren,* 33 *Ga. Supp.* 99; 1 Bish. Mar. Div. & Sep. § 1278; Fox *v.* Davis, 113 Mass. 255; Randall *v.* Randall, 37 Mich. 563; Gaines *v.* Poor, 60 Ky. 503; Hutton *v.* Hutton, 3 Pa. St. 100. . . An agreement between husband and wife to live separate and apart is illegal; and if a conveyance to the wife be founded upon such a consideration, it too will be void; but not if it be the result of a separation instead of being made to promote it." And in the case of *Melton* v. *Hubbard,* 135 *Ga.* 128 (68 S. E. 1101), this ruling was upheld and applied. The dissenting Justice placed his dissent upon the ground that under a proper construction the contract in question was not the result of separation, but was intended to promote separation between husband and wife, and therefore contrary to public policy. But in the case at bar we are to assume from the question propounded itself that the separation had already taken place. The application of the doctrine of the cases referred to requires the first question propounded by the Court of Appeals to be answered in the negative.

2. It is declared in the Civil Code, § 2929, that "every effort to restrain or discourage marriage by contract, condition, limitation, or otherwise, is invalid and void." Applying this provi-

sion of law to the contract under consideration, the question is, whether the effect of the contract between the parties is to restrain or discourage a subsequent marriage of the wife.

If the wife should marry again, the second husband would be responsible for her support. This was evidently in the minds of the parties in making this contract; and it was contemplated that the wife would have no occasion, in the event of her subsequent marriage, to resort to the provision contained in the contract for the monthly payments stipulated to be made to her. In these circumstances a reasonable construction of that provision of the contract that the payment of $25 per month should terminate if the wife should remarry is, that such provision should merely terminate when she should remarry and there should no longer be a necessity for it; and it was not intended as a condition, or limitation, or other provision made in an effort to restrain or discourage the wife from entering into a subsequent marriage. There is no agreement upon the part of the wife not to marry again, and no stipulation that she should not marry. The provision is merely expressive of the duration of the term during which the wife should receive the benefits.

In this view, the second question propounded by the Court of Appeals should also be answered in the negative.

*All the Justices concur.*

BECK, P. J. (with whom concurs GILBERT, J.), concurring specially. It appearing from a consideration of that part of the contract brought under review by the questions propounded that the agreement to pay the wife a certain sum was a reasonable provision for the support of the wife so long as she should remain unmarried, I do not think that the stipulation that these payments should terminate upon her remarriage, even if it had a tendency to operate as a restraint upon a second marriage of the wife and was therefore illegal and void, should be held to vitiate the entire contract at the instance of the parties bound to make the payments agreed upon as a support for the wife.