### GARDNER v. GARDNER.

No. 22584. Oct. 16, 1934.

Rehearing Denied Nov. 20, 1934.

Harry C. Kirkendall, for plaintiff in error.

E. S. Lowther and Henry S. Johnston, for defendant in error.

PER CURIAM. This case comes here on appeal from the district court of Logan county, where the defendant in error, James S. Gardner, was plaintiff, and the plaintiff in error, Addie Gardner, was defendant; and presents another tragedy of the sudden acquisition of wealth by those unaccustomed to it. The parties will be referred to here as they appear in the trial court.

The record presents a melodramatic story of a couple who married, settled on a farm, and lived contentedly there for 20 years, during which time they reared a family of three children; and through their joint efforts acquired title to two quarter sections of land in Logan county. They resided on one quarter section, which will hereafter be referred to as the homestead tract, on which oil was discovered in 1929, which produced great wealth and apparently resulted in the wrecking of the home.

In the early part of the year 1929, the parties executed an oil and gas lease on the homestead tract for a cash bonus of $60,000. It appears that all the land which the parties then owned, to wit, two quarter sections, had been purchased from the defendant's father, and represented the accumulated savings from the joint industry of the entire family, as above stated. The parties at the time evidently considered what they had as a sort of community property, because they promptly divided this bonus money equally between themselves, that is, $30,000 to the plaintiff, and $30,000 to the defendant.

Soon thereafter development operations for oil and gas were commenced on the homestead tract, and the family moved into a tenant house on the other tract temporarily, intending to acquire a new home.

In June of the same year, the first well, which was a large producer, was brought in; and in July following, the parties by mutual agreement divided the royalty interest in the homestead tract 'in five equal parts among themselves and their children, that is, one-fifth to the husband, one-fifth to the wife, and one-fifth to each of the three children; and royalty deeds were executed and delivered accordingly. This transaction appears to have been in recognition of the fact that the property represented the joint efforts of the entire family.

Other wells were brought in which greatly increased the family revenue. Thereafter the disruption of the home was rather sudden and violent. The wife became jealous of a neighbor woman by the name of Marie Thornton. In her suspicions of her husband's relations with this other woman, the defendant was joined by her two daughters, who appear to have been more severe on him than their mother. This was especially true with respect to the married daughter. Finally, on January 6, 1930, the defendant took her two minor children and went to Enid to live, where she filed a divorce action the next day against the plaintiff. That suit was afterwards dismissed, and on March 4, 1930, the present action was filed by the plaintiff in Logan county.

In his original petition, the plaintiff asked for a divorce and the custody of said parties' minor son. No service was had on the defendant, and on March 10th an amended petition was filed, which sought the same relief as in the original petition; but no service was obtained on the defendant.

Thereafter, on June 10, 1930, a second amended petition was filed, wherein the plaintiff alleges that the parties had entered into a written agreement dated June 7, 1930, providing for a division of their property; and the plaintiff requested the approval of said agreement by the court.

On June 16th following, the defendant, Addie Gardner, entered her general appearance in the case and joined with the plaintiff in requesting the approval by the court of the property settlement referred to in the plaintiff's second amended petition. It appears that no further action was taken until March 2, 1931, when the plaintiff requested leave to file a supplemental petition, which request appears to have been granted, and a supplemental petition was filed on that day by the plaintiff, setting up additional grounds for divorce; and on March 18th following, the plaintiff filed his third amended petition, wherein he prays for a

divorce, an injunction, the cancellation of the contract of settlement of June 7, 1930, and all other proper relief.

To this amended petition, the defendant filed her answer, in which she denied all of the plaintiff's alleged grounds for divorce and prayed that the plaintiff be denied a divorce and that the contract of settlement above referred to be ratified and confirmed by the court.

A trial of these issues resulted in a judgment in favor of the plaintiff, granting to him an absolute divorce and a cancellation of the contract of settlement above mentioned. The defendant appeals and contends, among other things, that she did not have a fair and impartial trial on account of the bias and prejudice of the trial judge against her and her cause; and that the judgment appealed from is against the clear weight of the evidence.

The third amended petition of the plaintiff is very lengthy and voluminous. Many acts of misconduct are charged to the defendant, but none involving her character. However, at the trial of the case, the only ground relied upon by the plaintiff for a divorce was alleged cruel and inhuman treatment, consisting of false accusations against him and by constantly pursuing, annoying, and unjustly spying upon him. As grounds for cancellation of said contract of settlement, he contended that the only consideration given therefor was the agreement of the defendant (not expressed in the contract) not to molest or annoy him; which he says was promptly and repeatedly breached by the defendant. These contentions are sharply controverted by the defendant.

We recognize the rule insisted upon by the plaintiff that this court, in an equity case, such as this, will not disturb the judgment of the trial court unless it is against the clear weight of the evidence; but we are also aware that it is our duty to examine the entire record and to render or cause to be rendered such judgment thereon as will comport with right and justice. Ruland v. Bohner, 149 Okla. 36, 299 P. 167; Elling v. Kohler, 150 Okla. 129, 3 P. (2d) 161. A careful examination of the record in this case convinces us that the judgment of the trial court is against the clear weight of the evidence.

True, there is no direct evidence of any intimate relations between the plaintiff and other women, but too many suspicious circumstances indicating such relations were shown to be brushed aside as "mare's nests" and "will of the wisps", as was done by the trial court. For instance, we find upon the undisputed evidence that the plaintiff took his family on a pleasure trip to the state of Missouri in the latter part of 1929, and wound up by stopping at the home of the mother of Marie Thornton, where he wanted to camp and remain for awhile, although he knew his wife was jealous of the said Marie Thornton at the time, and had never met Marie's mother before. The refusal of the defendant to remain there evidently incensed the plaintiff, who gave vent to his wrath a few days later by severely punishing their 13 year old son; and when the mother protested, the plaintiff became so enraged that he refused to ride with her and the boy on their return home.

Not long thereafter the plaintiff left ostensibly for Kansas City for a visit, but by strange coincidence he met this Marie Thornton at the home of her mother in Southwestern Missouri. He was also shown to be in company with the Thornton woman at various places and she was driving his car at others; and from one of plaintiff's own witnesses, a deputy sheriff from El Reno, comes the information that the plaintiff sought the aid of the law to regain possession of a diamond ring from the Thornton woman; and also the aid of this deputy sheriff to recover some money from a Mrs. Cole, and a diamond from one Lulu Hudson. It further appears that a jury in another case tried at Enid found that Marie Thornton had alienated the plaintiff's affections from the defendant. All of these things, and others shown in the record, convince us that the accusations of the defendant and her daughters were not without merit.

As to the property settlement, the plaintiff contended, and the trial court found, that it was procured by the over solicitation of the defendant and without consideration moving to the plaintiff for the execution thereof, other than an effort on his part to purchase peace and quietude of mind from the harassing and vexatious annoyance of the defendant, which he did not receive. But it is testified by the defendant, and undisputed by the plaintiff, that he himself first sought this property settlement. By its terms the defendant was to have title to the quarter section of land where no oil was produced, subject to a one-sixteenth royalty interest in the plaintiff; she was to have a Studebaker sedan, her household furniture,

two cows, a promissory note in the sum of $5,000 on which plaintiff was an indorser, and $1,000 in cash. The plaintiff was to have title to the surface rights to the homestead tract, where the oil was produced, subject to the above-mentioned mineral grants, and a certain $2,000 note. The contract was fully executed and conveyances were exchanged between the parties in accordance therewith.

On the face of the contract it would seem that the defendant got the better of the bargain, but it appears from the record that the Studebaker sedan and the furniture were purchased by the defendant with her own funds; and that the two notes mentioned represented loans by the plaintiff of defendant's funds, which he agreed to repay. So, it would appear, therefore, that the agreement was in reality a reasonable division of their remaining joint property. The finding of the trial court that said agreement was without consideration as to the plaintiff is clearly against the weight of the evidence, because it is not denied that the defendant conveyed her interest in the surface rights of the homestead tract and one-sixteenth interest in the minerals in the other tract, and surrendered the $2,000 note above mentioned to the plaintiff. There was no offer of restoration on the part of the plaintiff, and we are of the opinion that the property settlement was wrongfully set aside.

Following the execution of the settlement agreement. the parties had much trouble and litigation, and the acts of neither are to be commended. They both hired detectives at great expense to themselves, but apparently without much benefit. The plaintiff, who had a habit of burying his money or carrying it on his person, claims to have been robbed of about $17,000 while he was asleep in a rooming house in Guthrie; and he accused defendant's brother, Pearl Moore, among others, with having committed the crime. The said Moore was placed in jail, but later released. Whether this brother was guilty or not, his acts could not be charged to the defendant, who refused to assist him in any manner at the time; and it appears that this brother was not on very good terms with the defendant for the reason that he had testified for the plaintiff and against the defendant in other litigation shortly prior thereto.

The plaintiff, having sought the cancellation of the contract of settlement, had the burden of establishing sufficient grounds therefor, which he failed to do. Miller v.

Oil Well Co., 79 Okla. 139, 191 P. 1094; Riddle v. Hudson, 68 Okla. 172, 172 P. 921. Moreover, it was the duty of the plaintiff to place the defendant in statu quo as a condition to the rescission of said contract. This he also failed to do. Crouch & Son v. Huber, 87 Okla. 73, 209 P. 764; Holcomb & Hoke Mfg. Co. v. Jones, 102 Okla. 175, 228 P. 968.

The defendant did not ask for a divorce, and, if she had, we would be inclined to grant it. But our examination of the record convinces us that the family ties here have been broken beyond repair; and no useful purpose may be served by continuing same. We, therefore, affirm the judgment granting to the plaintiff a divorce, but reverse the same with respect to the cancellation of the property settlement, and direct that judgment be entered restoring to the defendant all her rights under said settlement agreement and that the same be ratified and confirmed in all respects. The costs of the action, including this appeal, should be borne by the parties equally. It is so ordered.

The Supreme Court acknowledges the aid of Attorneys Stephen A. George, Rutherford Brett, and J. E. Williams in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. George and approved by Mr. Brett and Mr. Williams, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion, as modified, was adopted.