## MURPHY v. McELROY.

No. 27655. May 31, 1939.

Rehearing Denied July 11, 1939.

Marshall & Cobb, for plaintiff in error.

Samuel A. Boorstein and S. H. Minsky, for defendant in error.

CORN, J. The parties to this action, formerly husband and wife, were married in 1915, and on August 10, 1924, the wife filed an action against the husband for divorce on the ground of abandonment without cause, and on August 16th thereafter the parties entered into the contract which is the basis of this action. Said contract provides for the payment by the husband to the wife $87.50 on the 3rd and 19th days of each and every month, beginning on August 19, 1924, so long as both of said parties are living and so long as the wife remains single and unmarried, and to terminate immediately upon the death of either party or the remarriage of the wife. The contract recites that said payments are accepted by the wife as "a full and complete settlement of all property rights between the parties," and "a full and complete settlement of any and all rights or claims which she (plaintiff) now has or may hereafter have against the defendant for alimony."

On November 17, 1924, an absolute divorce was granted the plaintiff upon the allegations of her petition, and she was restored to her maiden name, Mary Jane Murphy. No children were born of said marriage. The divorce decree made no reference to settlement of property rights or alimony. The defendant performed his part of the contract for more than ten years, paying in all the sum of $21,350 to the plaintiff. But on November 3, 1934, the defendant discontinued further payments, and the plaintiff brought suit in the justice of the peace court upon said contract for recovery of the first delinquent payment of $87.50, then appealed to the common pleas court. The trial court rendered judgment for the defendant and against the plaintiff. For convenience the parties are referred to herein as plaintiff and defendant, in which order they appeared in the trial court.

The controversy is focused upon the validity of the contract.

The plaintiff asserts that the statutes of Oklahoma particularly authorize settlement agreements between spouses on separation, while the defendant contends that the statutes pertinent to settlement agreements between spouses on separation do not authorize contracts operative after the entry of the divorce decree for sums indefinite as to termination or uncertain as to amount.

Sections 1655 and 1656, O. S. 1931, authorizing and defining the scope of contracts between spouses, are as follows:

"Section 1655: Either husband or wife may enter into any engagement or transaction with the other, or with any other person, respecting property, which either might, if unmarried, subject, in transactions between themselves, to the general rules which control the actions of persons occupying confidential relations with each other as defined by the title on trusts.

"Section 1656: A husband and wife cannot, by any contract with each other, alter their legal relations, except as to property, and except that they may agree in writing to an immediate separation, and may make provision for the support of either of them and of their children during such separation."

It thus appears that agreements between spouses may be made: (1) To settle property rights; (2) to immediately separate; and (3) to provide for the support of either during such separation, be it temporary or permanent.

The contract was entered into between the parties shortly after the divorce suit was filed, and by its terms was to terminate immediately upon the death of either party or immediately upon the remarriage of the plaintiff. The latter provision necessarily presupposes a dissolution of the marriage relationship then existing between the parties. The very fact that the defendant paid each and every installment according to the contract for a period of ten years after the divorce was granted and same was accepted by the plaintiff is most convincing proof of the intent of the parties at the time of making the contract and that such intent was clearly expressed therein.

One contention of the defendant is that the contract is invalid because it is indefinite as to termination and uncertain as to amount; that such a contract is subject to the same requirements as a judgment of a court making provision for the payment of alimony.

Section 672, O. S. 1931, provides:

"When a divorce shall be granted by reason of the fault or aggression of the husband, the wife shall be restored to her maiden name if she so desires, and also to all the property, lands, tenements, hereditaments owned by her before marriage or acquired by her in her own right after such marriage, and not previously disposed of, and shall be allowed such alimony out of the husband's real and personal property as the court shall think reasonable, having due regard to the value of his real and personal estate at the time of said divorce; which alimony may be allowed to her in real or personal property, or both, or by decreeing to her such sum of money, payable either in gross or in installments, as the court may deem just and equitable. * * *"

In the construction of said statute this court has held in a long line of decisions that where the decree provides for alimony to the wife at a certain sum per month, without fixing a definite amount ultimately to be paid, the decree is void as to the alimony. Dutton v. Dutton, 97 Okla. 234, 223 P. 149; Boulanger v. Boulanger, 127 Okla. 103, 260 P. 49; West v. West, 134 Okla. 226, 273 P. 209; Javine v. Javine, 134 Okla. 283, 273 P. 267; Oder v. Oder, 149 Okla. 63, 299 P. 202; West v. West, 157 Okla. 89, 10 P.2d 1088; Flaxman v. Flaxman, 169 Okla. 65, 35 P.2d 950; and Finley v. Finley, 174 Okla. 457, 50 P.2d 643.

This rule applies only to judgments and decrees of courts, and rests upon the sound public policy that judgment liens should be definite and certain as to amount, but the defendant cites no authority that can be construed as prohibiting spouses from entering into contracts to pay a sum of money, at intervals, over the life of one or the other of the parties, for a proper and lawful consideration. The statutes contain no prohibition against such contracts. As we have already observed, the contract was not merged into the decree or extinguished by it, but it stands as a valid and binding contract between the parties. The defendant makes no attempt to show that the contract was induced by fraud or other unlawful means, nor that it was not fair and equitable.

It is stated in the briefs that this exact question has never been determined in this jurisdiction.

Numerous courts have had occasion to express their opinions upon the validity of separation and property settlement agreements where, as here, the husband undertook payment of specified sums to the offended wife periodically for an indefinite period, such as her lifetime. We have found no case in which it has been intimated that such a stipulation is offensive to the policy of the laws of any jurisdiction.

In Re Hoffman's Estate, 177 N. Y. S. 905, a separation agreement had been entered into between a husband and wife by which the husband agreed to pay the wife a stipulated sum per week during her life. Upon the husband's death, the wife sought recovery of the agreed payments from his estate. The court held:

"Husband's agreement, binding himself and his personal representative to pay wife, from whom he is living apart, certain annuity during her lifetime, does not contravene public policy, and is enforceable by the court."

In the leading case of Galusha v. Galusha, 116 N. Y. 635, 22 N. E. 1114, the court held:

"A contract between husband and wife, executed after separation, through the medium of a trustee, whereby the husband agrees to pay to the trustee, during the wife's life, a certain amount each month for her support, and the wife and the trustee agree to save the husband harmless from any further liability for her support, is valid."

In Vanderburgh v. Vanderburgh, 152

Minn. 189, 188 N. W. 276, a contract was entered into between husband and wife which provided that the former should pay the latter a stated monthly sum so long as they were separated, without limitation as to ultimate amount. The court held:

"A contract by a husband for the separate maintenance of his wife, executed when they were living apart by mutual consent, is not contrary to public policy. The release of the husband from all other claims for the wife's support was a sufficient consideration for the contract."

In Barnes v. Klug, 113 N. Y. S. 325, a contract provided for payments to be made by a husband to his wife at a specified rate for her lifetime. The court held:

"Where a separation agreement provided that the husband should pay to the wife for her support certain weekly or monthly installments for her life, such contract was binding on the husband's personal representatives, though not so stated in terms, and the widow was therefore entitled to compel the retention by the husband's executors of an amount sufficient to provide for the continuance of her support."

In McCormack v. McCormack, 111 N. Y. S. 563, a separation agreement between husband and wife provided that the former should pay the latter $35 per week for the support and maintenance of herself and two sons, for an indefinite period, with no provision for the amount to be ultimately payable. The court said:

"The contract in the case at bar, being valid and based upon sufficient consideration, is enforceable."

In Levy v. Boldsoll, 62 Tex. Civ. App. 257, 131 S. W. 420, a separation agreement required the husband to pay $25 monthly to the wife, with no limitation as to the total sum required to be paid thereunder. The court sustained the validity of the contract, citing Galusha v. Galusha, supra.

In Watson v. Burnley, 150 Ga. 460, 104 S. E. 220, a separation agreement provided for payments by the husband to the wife of $25 per month "so long as she shall live." Addressing itself to the contract, the court held:

"A contract between husband and wife, providing for the wife's maintenance, made after a separation has taken place, is valid and enforceable."

In Melrose v. Besser, 77 Ind. App. 3, 133 N. E. 27, the court said:

"It is the settled law both of England and of this country that an agreement of separation between a husband and wife whereby he provides for her separate maintenance, and she convenants to release all her claims upon his estate, is lawful and not in contravention of public policy."

Sections 1655 and 1656, O. S. 1931, were taken from Dakota, where they, in turn, had been taken from California. The courts of the latter state have had occasion to apply them to agreements in all respects similar to the contract here under consideration, and have always upheld such agreements as being duly authorized thereunder. In McCahan v. McCahan, 47 Cal. App. 176, 190 P. 460, 463, a question arose as to the validity of a separation agreement between husband and wife providing for the division of property, for custody of a minor child, and for the payment of stipulated sums monthly to the wife for support of herself and the child. In upholding the contract and following former decisions interpretative of the statutes, the court said:

"Under our Code either husband or wife may enter into an agreement or transaction with the other, or with any other person, respecting property, which they might, if unmarried. Civ. Code, sec. 158. They may also agree in writing to immediate separation, and may make provision for the support of either of them, and of their children during such separation. Civ. Code, sec. 159. The agreement in question was apparently drawn pursuant to the authority thus given, and was one which the parties had the right to enter into. Pereira v. Pereira, 156 Cal. 1, 4, 103 P. 488, 23 L. R. A. (N.S.) 880, 134 Am. St. Rep. 107; Walker v. Walker, 14 Cal. App. 487, 493, 112 P. 479."

See, also, Brown v. Brown (Cal. App.) 256 P. 595, and cases cited therein.

In King v. King, 138 Okla. 40, 280 P. 271, this court had occasion to consider section 1656, supra (then section 6610, C. O. S. 1921), saying:

"It was the former holding of the English courts that, the separation of husband and wife being against public policy, a conveyance of property in consideration of articles of separation was void. But as times changed it became necessary to take cognizance of actual conditions and circumstances arising from separation of husband and wife, rather than of idealistic theories, correct ethically and morally but sometimes impractical of application, and there grew up the custom on separation for the husband to place the legal title of property in trust for the use and benefit of the wife, and such conveyances were gradually upheld by the courts.

"Under the provisions of our statutes (section 6610, C. O. S. 1921) a husband and wife may agree in writing to an immediate separation and make provision for support

of either of them, and of their children during such separation. Section 6611, C. O. S. 1921, provides: 'The mutual consent of the parties is a sufficient consideration for such an agreement as is mentioned in the last section.'

"In the case of Farmers' State Bank of Ada v. Keen, 66 Okla. 62, 167 P. 207, the court, after referring to the provisions of the above statute, stated: 'We do not hold that the statutes to which reference is made or the judicial trend encourages separations between husband and wife. Existing marital relations cannot be altered by contract; but in view of the fact that such separations inevitably take place, the statute is meant to give legal effect to necessary agreements for the protection of each spouse, and to define and enforce the duties of one toward the other—not to legalize the separation itself, but to meet the attendant condition'."

The separation agreement considered and held valid in the cited case contains provisions quite similar to those appearing in the contract here under consideration, except that there the sums agreed to be paid by the husband to the wife were in fixed amount.

In view of the statutes quoted and the decisions interpretative thereof, it must be concluded that contracts of the nature here presented are particularly authorized and are lawful. It is significant to note, too, that these statutes do not require that the sums which one party undertakes to pay to the other, either for future maintenance or as a consideration for release of property rights, must be in a fixed or definite sum, as distinguished from periodical payments over an indefinite period, as for life or until remarried. To read such a requirement into the statutes seems to us to be entirely unwarranted.

No principle of law is more firmly adhered to by the courts than the rule that compositions and settlements of civil controversies are to be encouraged and fostered, provided that, as between persons standing toward each other in confidential relationships, primary principles of honesty and fair play must be observed. Section 1655, O. S. 1931, makes the latter qualification applicable to contracts between husband and wife, by the reference therein made to the statutes relating to trusts. In the instant case there was neither claim nor proof that the wife (plaintiff) had defrauded or overreached the husband (defendant) in making the contract sued on. The burden would have been on defendant to establish such fact, had he contended for it. Gardner v. Gardner, 169 Okla. 469, 37 P.2d 599.

The general rule favoring settlement of controversies between those actually in, or about to be brought into, litigation, applies in all of its force to the settlement of property rights, future support and alimony between husband and wife who are, or are about to immediately become, separated.

In Hensley v. Hensley, 179 Cal. 284, 183 P. 445, in a jurisdiction from whence our statutes above quoted were taken, it was said:

"Proper settlements between husband and wife when there is no fraud are highly favored in the law."

In Re Jeannot's Estate, 212 Mich. 442, 180 N. W. 482, it was held:

"Contracts between husband and wife made after actual separation, or the launching of a bill for divorce, consisting of amicable settlements between the parties of their property rights, are favored and enforced, where they are fair and untainted by fraud."

Quoting from an earlier decision, Emory v. Emory, 181 Mich. 146, 147 N. W. 452, the court further said:

" 'This court has consistently held that, after actual separation, or the launching of a bill for divorce, amicable settlements between the parties of their property interests are not only lawful, but are to be commended.' "

In Halstead v. Halstead, 74 N. J. Eq. 596, 70 Atl. 928, Vice-Chancellor Garrison made the following declaration concerning separation agreements adjusting property rights and the subject of alimony:

"While the law does not favor separation between husband and wife, it does favor a settlement out of court and without resort to litigation of all matters in dispute."

We can find nothing in the policy of our laws which forbids settlements of the kind evidenced by the contract in suit. In view of the sections of the statutes above quoted, it would seem, on the contrary, to be the policy of our law to make possible voluntary settlements of such questions as this contract undertakes to settle. It would be a radical departure from the evident purpose of the Legislature to hold that estranged spouses should be compelled to bring their problems before a court for solution, and that they are prohibited by the policy and theory of our laws from ever voluntarily settling those problems between themselves and to their own satisfaction. No just reason can be found as a basis for denial of the right of parties to fairly adjust questions of property rights and future support in the way which the statutes specifically provide and authorize.

The judgment of the trial court is reversed and the cause remanded, with directions to render judgment for the plaintiff.

RILEY, OSBORN, GIBSON, HURST, and DAVISON, JJ., concur. WELCH, V. C. J., dissents. BAYLESS, C. J., and DANNER, J,. absent.