**Dorothy D. THOMAS, Appellee,**
v.
**Paul O. THOMAS, Appellant.**
**No. 45934.**

Court of Appeals of Oklahoma,
Division No. 2.
Nov. 20, 1973.

Released for Publication by Order of the
Court of Appeals Feb. 28, 1974.

Bob R. Schick, Oklahoma City, for appellee.

Rick Romano, Chiaf, Romano & Murphy, Oklahoma City, for appellant.

BRIGHTMIRE, Presiding Judge.

On January 4, 1967, a decree was rendered divorcing Dorothy D. Thomas from Paul O. Thomas and, among other things, awarded the parties' home to the woman and ordered the man to keep up the payments on the mortgage indebtedness against it in addition to weekly alimony payments which he was to make until $14,000 was paid, plaintiff remarried, or died.

Mrs. Thomas died sometime before March 20, 1972. The executrix of her estate cited defendant for contempt because he failed to continue making the home payments after his former wife's death. On May 26, 1972, the trial court found defendant "not guilty of contempt of Court," but did construe the mortgage payments order as property division, rather than alimony and "ordered" defendant to continue making the house mortgage payments just as he had before the death of Dorothy D. Thomas until the home loan was paid in full. Defendant's appeal is aimed at reversing the latter.

The basic theory developed by defendant in his brief is that the divorce decree order requiring him to make the house payments was in effect an order for him to pay additional "support and maintenance" beyond the specified alimony awarded. Since there is no question about the fact that the alimony payments ended with Dorothy Thomas' death, reasons defendant, there should therefore be none about the termination of the mortgage payments at the same time. He cites several cases for various kindred points, but as we view them, each falls short of lending supportive authority to his theory.

In Johnson v. Johnson, Okl., 460 P.2d 954 (1969), for instance, the terms of a

property settlement agreement were specifically set out in the divorce decree *as orders* of the court which, among other things, gave Mrs. Johnson a lump sum of money payable in installments and secured by a mortgage. Because the decree did not designate the sum as being for either alimony or division of property it became necessary for the supreme court to do so in order to resolve a dispute. The court found it was alimony since the decree provided that the obligation was nondischargeable in bankruptcy and would terminate on the wife's death. The decree otherwise contained no alimony provision. Thus the husband's contempt conviction for violating the court's order was upheld.

Ex parte Bighorse, 178 Okl. 218, 62 P.2d 487 (1936), another case defendant cites, was a habeas corpus proceeding following a post-contempt conviction incarceration for failure to make payments which were undisputably *ordered* by the court to be made as alimony.

 Also cited is Lemons v. Lemons, 205 Okl. 485, 238 P.2d 790 (1951), a case in which the court construed "ambiguous" language in the divorce decree *ordering* defendant to make certain payments "as alimony *or* property settlement or settlement of property rights." (emphasis ours) The order was made pursuant to the terms of a contract between the husband and wife reciting it was "in settlement of all property rights of plaintiff [wife] in lieu of alimony, which is hereby approved and made a part of this decree." The agreement provided only for installments of the sum terminating when the wife "has departed this life or has remarried." The supreme court held that the payments were in fact alimony, the order was void because alimony could not lawfully be awarded at that time (1947) in the manner provided in the settlement agreement thus dismissal of the contempt citation was correct. Though the reasoning underlying Lemons is somewhat bumpy we think these conclusions emerge: (1) one party may not enforce a contract against another by contempt proceeding;

(2) court orders which embody terms of an agreement can be enforced by contempt proceedings unless such an order is unenforceably invalid, in which event only the order—not necessarily the contractual obligation upon which the order is based—is void.

Discharge in bankruptcy of divorce related obligations was the issue in the cited cases of Battles v. Battles, 205 Okl. 587, 239 P.2d 794 (1952) and Treece v. Treece, Okl., 458 P.2d 633 (1969). Before filing suit for a divorce it was agreed in Battles that "the parties . . . shall continue to live separately and maintain separate places of residence and [husband] in this connection agrees to either buy or build a house to be used by [wife] as her home . . . not [to] exceed" $10,000 and that the wife would receive in addition $100 per month for maintenance. In an ensuing divorce action a decree was rendered reciting "that no relief as to property rights or alimony" was granted because the parties had made the contract mentioned. No house was ever built or purchased as agreed. Defendant later filed for and got a discharge in bankruptcy and so thought he had wiped out both the $10,000 obligation and the monthly payments. The issue of whether a court order had been violated was not involved—merely whether the agreed payments were discharged under the federal bankruptcy laws. The court, in construing both the contract and federal law, held the mortgage payments were not discharged because they were "substantially for the maintenance and support of a wife."

And in Treece the divorce decree incorporated provisions of a decree earlier rendered in an action for separate maintenance, child support and property division. The husband was ordered to make mortgage payments on a house awarded to the wife. After noting that Mrs. Treece had neither sought nor was awarded alimony in her divorce action, the court construed the mortgage payments obligation in the decree as "substantially for the support and main-

tenance of Mrs. Treece" and held the obligation was not discharged in bankruptcy.

The subject matter around which this dispute revolves is a court order—not an agreement. Generally, orders in equity decrees are enforceable by means of proceedings as for contempt. Sells v. Sells, 193 Okl. 27, 140 P.2d 1022 (1943). And so what the case boils down to is the construction of the home payments order. The appealing defendant wants the mortgage payments construed as "additional" alimony because alimony payments terminated with the death of Mrs. Thomas. Plaintiff contends otherwise.

Frankly we see nothing in the record to suggest the mortgage payments order was intended to be part of or an adjunct to the separate clause dealing with alimony. Contrarily we think an overview of the adjudicating portion of this particular decree clearly compels the conclusion that the mortgage payments order was utilized as a means of effecting an equitable division of property jointly acquired during this 30-year marriage.

This we think becomes apparent when we review the protocol of the decree orders: (1) dissolution of the marriage; (2) award of home to plaintiff with order for defendant to pay off mortgage; (3) order for defendant to deed the home to plaintiff; (4) order for defendant to pay various long term obligations; (5) order for defendant to pay various current debts; (6) award of "alimony judgment" of $14,000 payable in weekly installments of $25 "until such time as plaintiff shall remarry or" die "in which ever later event said judgment shall be considered vacated"; (7) award of attorney fees to plaintiff's attorney; (8) order for defendant to pay court costs; (9) award to defendant of "all real estate and property located outside the State of Oklahoma" and a "1958 Ford" car; (10) order for defendant to transfer title to Cadillac; (11) order for plaintiff to transfer title to the Ford; (12) denial of defendant's cross-petition; (13) delaying remarriage finality of the decree for six months.

The general format of the decree is obvious. Orders (2) through (5) relate to that share of the parties' property being awarded to plaintiff. Order (6) specifies the support and maintenance being allowed to plaintiff. Order (9) deals with that portion of the parties' property being awarded defendant. There is absolutely nothing in the record to discourage the inference that defendant was ordered to pay the house note and mortgage off as a means of effecting an equitable division of the property of the parties—a not unusual means employed to effect an equitable division of property. In our opinion the trial court would have had no basis for ruling any way other than the way he did.

Affirmed.

BACON and NEPTUNE, JJ., concur.