**Rebecca Jean GRIMSHAW, Appellee,**

v.

**Harry D. GRIMSHAW, Appellant.**

**No. 50822.**

Court of Appeals of Oklahoma, Division 2.

June 13, 1978.

Released for Publication by Order of Court of Appeals July 6, 1978.

N. Franklyn Casey, Tulsa, for appellee.

Frank R. Hickman, Tulsa, for appellant.

BRIGHTMIRE, Judge.

In anticipation of a divorce the parties entered into an alimony and property settlement agreement. When the divorce was granted on September 29, 1969, the court referred to and approved the agreement but did not incorporate its terms into the decree. Litigation later developed in connection with performance of the agreement. In the first post decree order the trial court gave the woman $4,629.03 which belonged to the man under the agreement. Since then the man has tried unsuccessfully to get credit for this sum in his alimony payments. He appeals from an order finding him in contempt of court for willfully failing to perform the alimony agreement after denying him credit for $4,000.

## I

Among other things the property settlement contract called for the man to get as his own separate property three insurance policies providing total coverage in the sum of $102,000. One of these was an ordinary life policy providing coverage of $82,000 on the man's life. Under the agreement the man was required to keep the woman named as beneficiary on the policy until the alimony payments terminated—payments which were $500 a month for 15 years—in

1984, and all child support payments had been paid.[1]

Due to some financial reverses the man needed to reduce the amount of his total monthly outlay in order to make ends meet. Among other things he found one way to cut expenses would be to convert the $82,000 ordinary life policy to a term policy which would require a lower annual premium. On August 3, 1971, there was filed an undated order signed by a district judge which recited that upon "good cause shown and upon the agreement of the parties . . . ." the divorce decree "is amended" to allow the man to convert the $82,000 policy ". . . [and] to convert said policy . . . back to . . . ordinary life not later than September 14, 1976." The court "further ordered that any cash value allowance be paid to Rebecca Jean Grimshaw at the time said policy is converted . . . ." to a convertible term policy.

Thereafter the man converted the policy and the insurance company sent the woman a check for $4,629.03 which apparently was the surplus cash value of the original policy. Later, when he was hailed into court, July 19, 1976, the man said he was not behind because he was entitled to credit on the alimony for the $4,000 she got from him. The trial court concluded, correctly we think, that he did not have jurisdiction of the contempt matter because the alimony payments in question were not required by a court decree but by an agreement of the parties, and obviously one cannot be in contempt of court for failing to perform a private agreement. *Lemons v. Lemons,* 205 Okl. 485, 238 P.2d 790 (1951); *Thomas v. Thomas,* Okl.Ct.App., 518 P.2d 1294 (1973). He did, however, grant the woman a judgment for accrued delinquent alimony payments. And, in the same order, at the man's request, "ordered" the man to pay the agreed to monthly alimony payments of

$500 in two semimonthly installments of $250 each.

On November 5, 1976 the woman again asked the court to cite the man for contempt of court alleging that: (1) he had willfully refused to reconvert the $82,000 insurance policy back to ordinary life by September 14, 1976, as he was ordered to do on August 3, 1971; and (2) he had willfully failed to make the alimony payments as ordered by the court on July 19, 1976, and was $500 in arrears. A citation was issued by the court as requested. The man filed an objection to the jurisdiction of the court to enforce either order with its contempt power and in the alternative asked the court to give him credit for the $4,629.03 the woman got from the insurance policy conversion as a credit on the alimony obligation.

The dispute came on for hearing February 2, 1977. The trial court held he lacked jurisdiction to enforce the order of August 3, 1971, relating to the insurance policy but that he did have jurisdiction to pass on the question of whether the man should get credit for the $4,629.03 insurance policy cash value money and to enforce the alimony order entered July 19, 1976, with his contempt powers. Accordingly he found the man: (1) to be in arrears $500 on his alimony; (2) guilty of contemptuously failing to pay such alimony in violation of the July 19, 1976 order; (3) was entitled to no credit for the cash value money received by the woman; and (4) should pay a $300 attorney's fee to the woman.

Within 10 days the man filed a motion for a new trial to which he attached an affidavit stating that "he was not aware until several years thereafter" that the woman had received $4,629.03 from the insurance in 1971, and that although the order (of August 3, 1971) gave her the right to receive the money, it was nevertheless

---

1. It may be that because there is doubt about the court's power to require one party to keep the other as the named beneficiary on a policy, as well as other legalities, the parties chose to keep the terms of the agreement out of the decree. *See Clark v. Clark,* Okl., 460 P.2d 936 (1969).

his money she held and he was entitled to credit for it along with 10% interest for five years.

The new trial motion was overruled March 4, 1977, and the man prosecuted this appeal.

## II

The first error said to have been committed by the trial court was concluding that he had jurisdiction to enforce the alimony payment with his contempt power. This contention has merit.

▆▆▆ The basis for subjecting the man to coercive incarceration on February 2, 1977 was a finding by the trial court that the man willfully violated the July 19, 1976 order to pay alimony. This was an error. Notwithstanding the suggestion of the parties—that the order modifies the decree— the fact is that it did not do so but merely modified the settlement agreement. This the court had no power to do. And not only was the court without power to modify the agreement he had no authority to incorporate its terms in a post decree order. Since he could not modify the agreement and validly order the parties to perform the contract, he, of course, could not enforce such an order with his contempt powers. As we pointed out earlier, the settlement agreement was merely approved by the court when he rendered the decree. It became a binding contract between the parties. It never became part of the decree. *Murphy v. McElroy,* 185 Okl. 388, 92 P.2d 369 (1939). Elementary it is that an agreement cannot be enforced with the court's contempt powers. *Thomas v. Thomas, supra.* And while the agreement can be modified by and with the mutual consent of its signatories, *Stuart v. Stuart,* Okl., 555 P.2d 611 (1976), they cannot confer jurisdiction on the court to either modify the agreement or make any order regarding its performance. It is hornbook blackletter law that jurisdiction of subject matter (as distinguished from jurisdiction over the person) cannot be conferred upon a court by the parties. *Brasier v. Brasier,* 200 Okl. 689, 200 P.2d 427 (1948). When the divorce decree was rendered in this case it made a final determination of the rights of the parties as to all justiciable matters. The fact that the parties elected to settle some of these matters by agreement rather than have the court resolve them judicially does not mean that the decree is any less final as to such matters or that several years later it can be modified should the parties change their minds. Except as specifically authorized by statute a divorce decree like any other judgment can be modified only within prescribed time periods (12 O.S.1971 §§ 1031, 1038) and only with reference to certain subject matter (child custody and support). *Fisher v. Fisher,* Okl., 558 P.2d 391 (1976); *Jones v. Jones,* Okl., 442 P.2d 319 (1968); *Knight v. Armstrong,* Okl., 303 P.2d 421 (1956); *Arnold v. Arnold,* 194 Okl. 571, 153 P.2d 224 (1944); *Phillips v. Phillips,* 190 Okl. 617, 126 P.2d 254 (1942). Therefore, insofar as the July 19 order attempts to modify the terms of the alimony provisions of the property settlement agreement, it is void.

## III

With regard to the matter of whether the man is entitled to credit for the insurance policy money received by the woman, the man contends the trial court had no jurisdiction to order him to give the woman the $4,629.03 as he did on August 3, 1971. The woman on the other hand says "the trial court modified the divorce decree by allowing the defendant to convert whole life policies to term policies, provided the cash value proceeds were paid to the plaintiff," and he did so at the request of the man. The man counters by admitting he did ask the court for permission to convert the policy but he certainly did not ask the court to give any of his assets to the woman, and for sure he did not understand he was not to be given credit on his contractual obligations for whatever amounts the woman may receive.

What we have said with reference to the July 19, 1976 order applies with equal force to the August 3, 1971 order. Whether agreed to by the parties or not the court had no jurisdiction over the subject matter (modification of the agreement), and therefore was powerless to order the man to reconvert his policy within five years or to effect a judicial transfer of the man's money to the woman.

We hold, therefore, the finding complained of—that the man is not entitled to alimony credit for the $4,629.03 the woman received from the man's policy—is without legal force or effect.

## IV

The order of February 2, 1977 is vacated. We make no order with respect to the cash value fund because we have no power to do so. Both parties have an adequate remedy at law to enforce their contractual obligations with respect to both the alimony and insurance monies.

The woman's request for an attorney's fee is denied and costs are taxed against her.

Order vacated.

BACON, J., concurs.

NEPTUNE, Presiding Judge, dissenting:

The critical issue in this case is: after a divorce decree approves the agreement of the parties disposing of issues relating to property, alimony, child support, and other attendant matters over which the divorce court exercises its statutory and equitable powers, is the court thereafter without jurisdiction to entertain applications of the parties for an order of the court relating thereto based upon the parties' further agreement which would modify or supplement the original agreement?

When a property settlement agreement is submitted in connection with a divorce, the court may approve in whole or in part, reject, or modify the contract as facts and circumstances warrant. *Miller v. Miller,* Okl., 456 P.2d 113 (1969). This rule recognizes that the court must make a disposition despite the agreement that is equitable. When, as in this case, the parties propose a supplement to the agreement, it is logical and a recognition of the objective of the court in the first instance that the parties submit to the court an application for approval of the supplement. The sanction of the court provides a protection of the rights and duties of both parties. In the circumstances of a consent decree such as obtained in the instant case, modification of the decree should be available with consent of the parties. *See Stuart v. Stuart,* Okl., 555 P.2d 611 (1976).

I think the applications made by the parties reasonably solicited modifications to which the parties agreed, and the court accommodated them. A party who applies for affirmative relief from a court and obtains it in the form of an order should not be permitted to later challenge the jurisdiction of the court to issue the order he requested.

I would affirm.