MINA BUTTLAR

*v.*

CHRISTIAN BUTTLAR.

[Decided June 20th, 1906.]

1. Since equity has exclusive jurisdiction of contracts between husband and wife, it was proper to bring a suit in equity to recover money due complainant from defendant under a separation agreement, though the parties were at the time of the suit divorced.

2. In a suit by one against her former husband to recover under a separation agreement, equitable defences will be open to him, he being not restricted to matters that would be defences at law.

3. Where complainant sued in equity to enforce a separation agreement made before she was divorced from defendant, he could urge any equitable defence based on circumstances arising subsequent to a previous adjudication in a suit brought by her under the same agreement.

4. Where a separation agreement made by a husband and his wife provided that he should have all the income from their joint real estate "during the term of his natural life," but no term was mentioned during which he was to pay her $75 per month, he was bound to continue the payments during their joint lives, and that she obtained a divorce, thus changing the estate from one in entirety to one in common, did not divest her of her rights under the agreement, nor afford him grounds to rescind it.

5. Where a husband and wife made a separation agreement whereby he should receive the income of their joint property, and should pay her $75 a month, and after her divorce from him he procured the partition of the property, the fact that he was thereby deprived of the income of her portion of the property did not relieve him from liability for the monthly payments.

Heard on bill, answer, replication, cross-bill and answer thereto, and proofs in open court.

This is a bill filed by Mina Buttlar against Christian Buttlar. The parties were husband and wife until they were divorced by a decree dated March 24th, 1902. The bill is filed to secure the payment by the defendant to the complainant of money alleged to be due to the complainant under an agreement between the parties dated January 31st, 1894.

The answer denies the liability of the defendant under the contract, and the cross-bill seeks to have the agreement canceled.

*Messrs. Weller & Lichtenstein,* for the complainant.

*Messrs. Vredenburgh, Wall & Van Winkle,* for the defendant.

GARRISON, V. C.

At the time when Mina Buttlar and Christian Buttlar were husband and wife they entered into the agreement in question, which is dated January 31st, 1894, and which is printed *in extenso* in *Buttlar* v. *Buttlar,* 57 N. J. Eq. (*12 Dick.*) 650.

The defendant, in November, 1895, declined to make further payments under this contract, and the complainant filed her bill to compel him to do so. In the court of chancery the defence of the husband that it would be inequitable to enforce the agreement against him was sustained, but the decree in his favor was reversed in the court of errors and appeals. *Buttlar* v. *Buttlar, supra.*

Thereafter the defendant made payments in accordance with the terms of the agreement down to and including the 24th day of March, 1902. Upon that date a decree of divorce was entered in favor of the wife against the husband upon the ground of his adultery. He began a suit for divorce against her upon a charge of her desertion, to which suit she filed a cross-bill. The bill of the husband was dismissed, and the decree was in favor of the wife upon her cross-bill.

From the date of this decree of divorce he has refused to make payments under the terms of the contract.

On the 25th day of March, 1902, the defendant served upon the complainant a paper in which he declared that he rescinded the contract above mentioned, stating, among other things, as grounds for the rescission that the agreement was made between the parties while they were husband and wife, and in consideration of that relationship; and further, because the agreement was made in consideration of the real estate being held between the parties by entireties, which particular estate had been determined by the decree of divorce.

In 1903 the defendant in this suit began a suit in partition against the complainant in this suit with respect to the real estate above mentioned. She endeavored to have his bill dismissed, setting up, among other things, the agreement aforesaid. The court of chancery decreed the partition. *Buttlar* v. *Buttlar, 67 N. J. Eq. (1 Robb.) 136 (Vice-Chancellor Pitney, 1904)* ; affirmed on appeal, June 18th, 1906. The real estate was sold under the decree in partition, and the net proceeds were divided equally between the parties.

The present suit is to recover the money alleged to be due under the agreement from the 24th of March, 1902, to the date of suit.

Notwithstanding the fact that the parties are no longer husband and wife, it was proper to bring this suit in equity, and not at law. This is so because equity has exclusive jurisdiction of contracts entered into between husband and wife. It is not the incapacity of one spouse to sue the other at law which is controlling, but their incapacity at law to make a contract. At law agreements between husband and wife are void, but in equity they will be recognized, and will be enforced if fair and fairly obtained. *Wood* v. *Chetwood, 44 N. J. Eq. (17 Stew.) 64 (Vice-Chancellor Van Fleet, 1888); affirmed, 45 N. J. Eq. (18 Stew.) 369; Demarest* v. *Terhune, 62 N. J. Eq. (17 Dick.) 663 (at p. 666) (Vice-Chancellor Stevenson, 1901).*

The complainant insists that the court of errors and appeals has decided that this identical contract is valid; that although suit upon it must be brought in equity, it is not open to equitable defences, and therefore that the defendant is restricted in the present suit to those matters which would be defences at law. In support of this contention he points out those parts of the opinion in the case in the court of errors and appeals (*57 N. J. Eq. (12 Dick.) 654*) in which the court says: "Such suit is held to be a form of legal proceeding which is carried on in a court of equity merely because the legal right cannot be asserted in the form of a suit at law." And again: "It would * * * be a clear denial of a remedy to hold that in such a case the injured party is obliged to waive her rights at law." It will be observed, however, that in disposing of the case the learned judge writing the opinion of the court of errors and appeals did not rest his decision upon the point that no equitable defences were admissible, but proceeded to analyze the equitable defences which were set up, and reached the conclusion that they were not sustained by the proofs.

I do not think, therefore, that it can be safely concluded that the court of errors and appeals in the reported case decided that equitable defences were not admissible in these suits in equity to enforce agreements entered into between married people. As I have heretofore stated, in my view it is the incapacity of married people to contract with each other in a way recognized at law which vests equity with jurisdiction.

The expressions of Chief-Justice Beasley· upon this subject are so clear and comprehensive that the matter cannot be better elucidated than by quotation. In the case of *Woodruff* v. *Clark, 42 N. J. Law (13 Vr.) 198* (at *p. 200*) (*Supreme Court, 1880*), he said, speaking with respect to the Married Women's act and its effect upon the right of married people to contract with each other: "The object was to leave the husband and wife, touching their capacity to bargain together, on the ancient ·footing of the common law. The clause is virtually a legislative declaration that, as heretofore, they may enter, *inter sese,* into equitable agreements, but not into legal agreements. It was obviously intended that the court of equity should, as it had always done prior to the amplification of the rights of the wife, exercise a supervision over the engagements of married persons. Nor is it deemed· that such an adjustment was an unwise or illiberal one. The subject is one that requires more delicate handling than could be given it through the instrumentality of ·a jury. Contracts of this class do not always rest, in point of validity, on fixed and palpable rules of law. Sometimes they approach closely to the field of discretion. * * * So it often happens that relief is afforded only upon equitable conditions. All these precautionary measures would be wanting to a suit at law. The union arising from the matrimonial connection is so entire, the interest so mutual and the confidence so·complete that the question in the given· case, whether a transfer of property has been equitably obtained by one of the married persons from the other, or is the creature of coercion or undue influence, is often one of the most subtle and abstruse subjects that can be presented for judicial investigation—an investigation to which the methods of a court of conscience are alone adapted. Few subjects would seem to fall more appropriately under equitable cognizance."

Many cases in our courts since this decision have cited and enforced this principle.

I therefore conclude that in these suits the proper rule is to permit any defences which are open to a defendant in equity.

In the suit at bar certain matters between these parties are *res adjudicata.* It is *res adjudicata* that this agreement was

fair, and was not obtained by any means which a court of equity would hold to unfavorably affect it.

The defendant, however, insists that since the complainant again applies to the court of equity to enforce it, he is entitled to any defences which might be urged in equity which are based upon circumstances arising subsequent to the previous adjudication. I conclude that this is the right of the defendant.

The defendant sets up three separate defences of this nature:

*First.* That by reason of the decree of divorce entered upon the 24th day of March, 1902, he is no longer under liability with respect to this agreement.

*Second.* That by reason of the notice of rescission given by him to the complainant on the 25th day of March, 1902, the contract is ended, and she may not now enforce the same.

*Third.* That by reason of the fact that the property has been sold in partition, and the complainant has received her one-half of the net proceeds of such sale, he is no longer under any liability to her with respect to this agreement.

It will be observed that the agreement provides that the defendant shall have the right to all of the rent, income and profits of the real estate owned by them jointly "during the term of his natural life." There is no term mentioned in the agreement during which he is to continue to pay her $75 a month, but I think it perfectly clear that a reasonable construction of this agreement is that he was to so continue during the period of their joint lives. I think it clear that this was the intention of the parties at the time that they entered into this agreement.

The obtaining by the wife of a divorce against her husband would not, according to the authorities, divest her of her vested rights under such an agreement. *Buttlar* v. *Buttlar, 67 N. J. Eq. (1 Robb.) 136* (at *p. 139*) (*Vice-Chancellor Pitney, 1904*). To the authorities cited there add *Galusha* v. *Galusha, 116 N. Y. 635; 24 L. Ed. 174.*

This is dispositive of the defence first mentioned.

I do not think that the second of the suggested defences is of any greater efficacy. I cannot see how this defendant has shown any right to rescind this contract. The court of errors and appeals, in its decision (*57 N. J. Eq. (12 Dick.) 645*) in pass-

ing upon this identical contract, said (at *p. 655*) : "That it was fairly procured is not denied by this defendant either in his answer or in his proofs. It was drawn, at his own request, by his confidential lawyer and adviser, who was then, and has ever since remained, not only in the court of chancery, but also in this court, his chosen counsel. Nor has this defendant claimed that this paper was procured through any fraud, accident or duress."

In my view he is absolutely debarred from setting up any grounds for rescission, unless they be such as have arisen since the adjudication just referred to. With respect to such grounds, the only ones suggested by him are the divorce suit and the fact that the effect thereof was to change the estate from one by the entirety to one held in common. I fail to see how this in any way gives him a right to rescind.

As I have just concluded, the divorce suit did not have the effect of ending this agreement, and this is the only subsequent event urged by him in his notice, and is not, as I have just held, effective.

The third defence urged is with respect to the partition suit and its effect. In that suit, as will appear from an inspection of the opinion of the vice-chancellor in deciding the same (*67 N. J. Eq.* (*1 Robb.*) *136* (*Vice-Chancellor Pitney, 1904*)), it was determined that the contract of January 31st, 1894, did not give Mrs. Buttlar any lien, legal or equitable, upon the interest of Mr. Buttlar in the property in question for the monthly payment provided for therein. · That which that agreement did give to the husband was the one-half of the rents and profits of the land to which the wife had a right. The court said, speaking of the right of the wife thus vested in the husband by her: "That right the complainant [Mr. Buttlar] has deliberately renounced both in the written rescission, to which reference is above made, and also in filing his bill for partition. I am not aware of any authority for the proposition that a tenant in common of an equal undivided share in lands, who also holds an encumbrance on the other share, cannot prosecute a suit for partition where he waives his lien upon the other share. I can find nothing in the agreement of January 31st, 1894, which gives the defendant

[Mrs. Buttlar] any lien upon the complainant's [Mr. Buttlar] share for the monthly payment provided thereunder. I think that the existence of the agreement, even if the complainant [Mr. Buttlar] has by it a continuing lien upon defendant's [Mrs. Buttlar] share to secure his liability thereunder, furnishes no defence to his suit for partition. He prays no relief against it, nor does he pray in the alternate that if it be held binding upon him that he is entitled to a lien upon the defendant's [Mrs. Buttlar] share to protect himself against it."

This defence, therefore, amounts to this—that the husband, having received from the wife the right to all of the income and profits of the property during his life, and having deliberately and of his own volition given up that right, has thereby released himself of liability under the agreement of January 31st, 1894.

Speaking generally, it may be said that one cannot voluntarily waive, or neglect to protect himself with respect to, his rights and base upon such waiver or neglect a right in himself to defend against an existing liability. It is no fault of Mrs. Buttlar that her husband has not to-day the right to collect the rents and profits, or to have a lien upon the entire proceeds of sale of the property for his protection. In the partition suit she vigorously defended against the right of partition, insisting that the property should remain as it was, in his possession, so far as enjoying the income thereof was concerned.

As is clearly pointed out in the opinion just referred to, he could have obtained protection of his rights had he sought it. He not only did not seek it, but voluntarily waived it. I cannot find any principle in aid of one thus circumstanced.

As was said by the court of appeals of New York, in the case of *Galusha* v. *Galusha,* previously cited, speaking with respect to such a contract: "After its making it was not in the power of either party, acting alone and against the will of the other, to do any act which would destroy or affect that contract." Whether this statement of the law is too broad or not, it certainly applies, in my judgment, to the acts herein set up by the defendant as defences against the enforcement of this contract.

Such contracts as these, the authorities show, will be carried out by a decree for the payment of the money provided therein

in cases in which there is no monetary or other valuable consideration of a tangible nature passing between the parties. If in the case at bar the defendant urges that it is apparent that this contract had other consideration than the marital relation subsisting between the parties at the time and his obligation to support her, it may be, for the purpose of the argument, conceded, and the answer is already given, namely, that such consideration as is not attributable to the relationship then subsisting between the parties is still his, so far as any act of the other spouse is concerned, and if it is not his, it is because of his voluntary waiver thereof.

The conclusion which I reach, therefore, is that the defendant has not made out any one of the defences urged.

From the time of the divorce, March 24th, 1902, to the date of the sale in partition the defendant was under obligation to pay to the complainant the sum of $75 a month, from which, however, there must be deducted certain sums of money which have been paid to her by him under circumstances which need not be detailed since they do not affect the issue.

As a result of the sale in partition the complainant, as heretofore stated, received the one-half of the net proceeds of sale, amounting to $9,178.65. The net proceeds just alluded to were arrived at by deducting the mortgages, expenses, costs, &c., and also certain mortgage interest. The defendant was under obligation to pay this mortgage interest, and I conclude that under the agreement she is entitled to the repayment to her by the defendant of the sum thus improperly deducted from her share. This amounted to $132.33.

There remains to be disposed of the liability of the defendant from the time when, as a result of the sale in partition, the net proceeds of the sale of the real estate were equally divided between the parties down to the time of the filing of the bill. This is a subject which might have given rise to much difficulty were it not for the position which the complainant has taken respecting the same.

As I have previously said, the authorities are clear that the divorce decree did not relieve the husband of liability under this agreement, and his plea that he is relieved from liability there-

under because he no longer is in receipt of the rents and profits of the real estate, and the defendant is in possession of her one-half of the net proceeds of the sale of the real estate, is answered by the fact that it is entirely by his own act and volition that such is the case.

I think it a very grave question whether he could escape liability to the full extent of his contract under the circumstances of this case. So far as the complainant is concerned, she has done nothing to deprive him of every right which he had, or could possibly claim to have, under the agreement. Any right which he once had thereunder, and which he has not now, so far as the real estate is concerned, he has voluntarily waived or relinquished. It is very questionable whether a defendant who has thus himself given away his rights or waived them is in any position to ask a court of equity to extend protection to him when the existing liability is sought to be enforced against him. If any such right is accorded this defendant, its utmost extent would be that the contract would not be enforced in such a way as to leave him in a worse position than he would have been in if he had retained a lien upon the share of the proceeds of the sale which belonged to Mrs. Buttlar. If her share of the proceeds of the sale of the real estate were impounded and put out at interest, and he received the interest therefrom, he would be getting all to which he could possibly be entitled, and the complainant would then be entitled to a decree for the $75 a month, as provided in the agreement.

The complainant concedes to the defendant even more than this. I say "concedes" because I am· not deciding that he has the right, and have suggested as above that it is very questionable whether he has. But I do not stop to consider or decide this, because this is all that the complainant asks for, and is certainly all to which the defendant is entitled. In the original and in the answering brief of the complainant it is said that the position which she takes is that "the complainant should be allowed the $75 a month, less the legal rate of interest on her share of the proceeds in the equity of redemption." To the extent that the legal rate of interest would exceed the actual rate

of interest which the investment of this sum of money would realize, this is gratuitously favorable to the defendant.

The decree, therefore, with respect to the period between the date of the receipt by the complainant of her share of the proceeds of sale and the filing of the bill, will be that the defendant is liable for $75 a month, less the legal rate of interest on the amount received by her as her share of the proceeds of the sale.

The cross-bill of the defendant must be dismissed, with costs.

I will advise a decree in accordance with these conclusions.