## STARK v. STARK.

No. 28621.   May 31, 1939.

Rehearing Denied June 27, 1939.

Gibson & Savage and Sam Glassman, for plaintiff in error.

Chandler, Shelton & Fowler, John W. Swinford, and Edgar S. Vaught, Jr., for defendant in error.

CORN, J. This is an appeal from a judgment of the district court of Oklahoma county in favor of the defendant in error, Hester M. Stark, in an action for breach of contract and separate maintenance brought by Hester M. Stark, defendant in error, against her husband, H. O. Stark, plaintiff in error. For convenience the parties herein will be referred to as Hester M. Stark, plaintiff, and H. O. Stark, defendant.

The plaintiff alleged in her petition that the defendant had breached a separation contract which had been entered into between said parties, and that said defendant was possessed of a large amount of property and had an annual income of $6,-000, and asked that defendant be required to fulfill and comply with the separation agreement, and that the court order an equitable division of the property of plaintiff and defendant.

The contract which plaintiff alleged was breached by the defendant is entitled "Articles of Separation," and is as follows:

"This agreement, made this 21st day of May, 1935, by and between H. O. Stark, party of the first part, and Hester M. Stark, party of the second part, husband and wife, of Oklahoma City, Oklahoma, Witnesseth.

"That, whereas, certain differences have arisen between the said parties of the first and second parts, by reason whereof they have consented and agreed, and do hereby consent and agree, to separate, and live separate and apart from each other in the future and during their natural lives, in accordance with the terms and conditions hereinafter set out:

"(1)   The said party of the first part agrees to give party of the second part $250 per month for her support and maintenance.

"(2)   The said party of the first part agrees to and does relinquish any and all rights whatsoever that he may now have or in the future acquire in any of the real or personal property of the party of the second part wherever said property may be located.

"(3)   The said party of the first part agrees to have returned to the children of party of the first part all monies given the sister of the party of the first part, Mrs. Winnie Wollfarth of Jacksboro, Texas, supplied to her since the death of her husband in April, 1934.

"(4)   The said party of the first part agrees to refrain from disposing of any stocks and bonds or property now in his possession without giving party of the second part one-half of the proceeds of such disposition.

"(5)   The said party of the first part agrees to maintain the taxes and insurance on the residence of said party of the second part at 1500 East Eighth Street, Oklahoma City, Oklahoma, during the time the son of both parties, Willis R. Stark, is residenced there.

"(6)   Said parties further agree in consideration of the premises hereof, not to take any proceedings to obtain a divorce or judicial settlement between the parties hereto, in respect to any acts or misconduct which may have heretofore taken place on the part of either of the said parties."

Omitting formal recitals, the verified answer of the defendant is as follows:

"For further answer defendant admits that he and plaintiff were married on or about June 23, 1907, and that all the children of said marriage are now of legal age.

"The defendant further admits that on or about the 21st day of May, 1935, the said defendant signed articles of separation with the plaintiff.

"That said articles of separation are void for the reason they provide for alimony and also property settlement; that they are harsh, oppressive, unfair, and were obtained by duress; that immediately prior to the date on which said articles of separation were entered into, this defendant was working in Minneapolis, Minnesota, as an ex-

aminer for the State Insurance Commissioner; that he came to Oklahoma City for a few days in order to do some emergency work for the Insurance Commissioner at the State Capitol. That while in Oklahoma City suit was filed against him by this plaintiff and an order secured restraining him from withdrawing any money from the bank or from disposing of any of his property; that it was necessary, in order for him to continue with his employment with the State Insurance Commissioner, to return to Minneapolis and complete the job there.

"That said articles of separation were signed because of said suit and in order to make it possible for him to return to his duties in Minneapolis; that this plaintiff had threatened to file suit for divorce and make many accusations therein which would have been embarrassing to the children of the plaintiff and defendant, three of whom reside in Oklahoma City and who had attained a respected position in society, and this defendant feared that the stigma of divorce proceedings and accusations therefrom would embarrass his children. That plaintiff had threatened to go to the Insurance Commissioner, the employer of the defendant, with certain accusations as well as write to defendant's sister residing in Jacksboro, Texas, and make statements about the character of defendant.

"That the agreement of separation is wholly lacking in consideration from plaintiff to the defendant; that said agreement is wholly unfair to the defendant for the reason it obligates him to pay to the plaintiff more than he should be required to pay in view of the property and funds he now possesses and the amount of his present and prospective future income; that this defendant is employed by the State Insurance Commissioner and works on a per diem basis at the rate of $25 a day when he is employed; that during the last few years he has lost considerable time because of ill health and because of his present condition of health it is to be reasonably expected in the future that his income will gradually decline; that the work he is required to do is technical and detail and is a constant strain on defendant's eyes and that his eyes are becoming weaker and it is apparent he cannot continue the same type of work and receive the same income for a very long period in the future. That he is now 66 years of age. His average income is now approximately $500 a month or $6,000 a year.

"Defendant states that his total net worth at this time does not exceed $8,000.

"Defendant further states that he carries insurance in the amount of $5,000, on which there is a loan of $3,000, which is payable to the plaintiff herein and expects to and will continue such insurance in full force and effect.

"That since March of 1935 the defendant has paid to the plaintiff the sum of $250 a month up to date with the exception of a period of four or five months, during which time he paid her approximately $150; that early in the year of 1935 this defendant deeded to the plaintiff their home located on East Eighth street in Oklahoma City, having an approximate value of $4,000, and ever since said date has paid the taxes and insurance due thereon; that this defendant has offered to make a reasonable property settlement with plaintiff but plaintiff has refused; that this defendant has offered to enter into a fair agreement for separate maintenance but plaintiff has refused.

"That plaintiff is possessed of real and personal property from her own personal estate at a value of approximately $4,000 or $5,000, that plaintiff is in possession of real and personal property acquired during the time the parties hereto have been married and given to the plaintiff by the defendant of a sum which defendant verily believes to be in the approximate amount of $7,000 or $8,000.

"Defendant admits that defendant and plaintiff are now living separate and apart and that apparently a reconciliation is impossible, and that the parties hereto are entitle to a fair and reasonable division of their property or the plaintiff is entitled to a fair and reasonable agreement for separate maintenance."

In her reply plaintiff denied all the allegations of the answer of the defendant inconsistent with the allegations in her petition.

The evidence of the plaintiff was that in December, 1934, she filed an action against defendant in the district court of Oklahoma county for separate maintenance; that she also filed a restraining order, restraining him from disposing of any of his property. Subsequently, after negotiations, an oral agreement was made which was substantially the same as the written agreement upon which this suit was based.

After the oral agreement was made, defendant returned to his work in Minneapolis, Minn., and was there for several months. Later on the 5th day of May, 1935, the oral agreement was reduced to writing and was signed by both the parties.

Defendant complied with the terms of that written agreement and paid $250 per month to plaintiff until October, 1935, at which time he discontinued paying $250 per month and started paying $150 per month, which was continued until May, 1936, at which time this suit was filed. Thereafter he resumed payment of $250 per month.

Mrs. Stark, plaintiff, testified that at the time the contract sued upon was entered into, she owned 135 acres of land in Texas,

having a reasonable value of $2,000, and that she had another piece of property containing 54 acres, having a value of approximately $15 per acre, or $750. She further testified that she had money invested with the Local Building & Loan Association of Oklahoma City which was inherited by her in the amount of $3,000; that she had $2,000 in the Morris Plan in Washington, D. C., which was inherited by her; that she had $3,000 invested in Oklahoma Building & Loan Association which she had saved from the money paid to her by defendant, and that their home, having a value of approximately $2,000, was deeded to her in 1935 by defendant.

The evidence of defendant was that at the time he entered into the contract with plaintiff he had no property whatever other than approximately $200 in cash, and an equity in certain stocks which he had purchased and owned on the margin in the amount of $1,500, and that the value of all his property of every kind and character, with the exception of his interest in their home, did not exceed $2,000.

Mr. Stark further testified that his income for a period of years had averaged approximately $6,000 per year, and he was employed by the State Insurance Department as insurance examiner and actuary, and received compensation at the rate of $25 per day for each day he was employed; that he had a paid up insurance policy in the amount of $5,000, on which there was a loan for $3,000, being the full cash value of the policy; that said policy was made payable to plaintiff, and that it cost him $200 per year to pay the interest on the loan and thereby keep the policy in force. He also testified it was necessary for him to pay income tax of approximately $300 per year, and that tax was upon his entire income, including the amount of money he was required to pay plaintiff, and was required to pay rent for his apartment in the amount of $37.50 per month; that on the date of trial, December 3, 1937, his total assets consisted of cash in the amount of $8,966.74, stock valued at $50, and accrued and unpaid salaries of $525, making a total net worth of approximately $9,500.

From the above evidence the court rendered a judgment in favor of the plaintiff, as follows:

"It is the judgment of the court that the defendant has failed to establish that the contract entered into on the 21st day of May, 1935, was induced by any misrepresentations, fraud, undue influence, or duress; has failed to establish that at the time the contract was entered into it was inequitable or unconscionable; and that there has been no change of conditions subsequent to the time when the contract was entered into which would render present performance of the contract in accordance with its terms unjust or inequitable, but the court adjudges that the contract is of that nature which, if at any time the performance thereof and the enforcement of the performance should become inequitable and unjust by reason of the change of condition of the parties, that performance thereof might be altered and modified.

"It is therefore the judgment of the court that the plaintiff have and recover of and from the defendant the amount of arrears, whatever that is."

The trial court, after hearing the evidence, concluded this contract was neither inequitable nor unconscionable nor induced by any fraud or overreaching, and was entered into openly. However, the trial court did adjudge such contract was subject to modification if, at some time in the future, performance became inequitable or unconscionable.

It is a settled principle that the courts will enforce contracts which parties make themselves, and will not make contracts for the parties. Mid-Continent Life Ins. Co. v. Skye, 113 Okla. 184, 240 P. 630; Autry v. First Nat. Bank, 131 Okla. 279, 269 P. 286. Neither will the law make a better contract for parties than they themselves have seen fit to enter into, and it is the duty of the courts to enforce valid contracts which have been voluntarily entered into, in the absence of fraud or mistake. There exists no authority in the courts to relieve parties of their contractual obligations. Anthis v. Sullivan Oil & Gas Co., 83 Okla. 86, 203 P. 187; Finerty Investment Co. v. Athey, 89 Okla. 284, 215 P. 611.

Furthermore, the courts must give effect to the contracts as made by the parties, unless they fall within inhibited classes, and cannot alter or change them. Smith v. Ferguson, 96 Okla. 150, 221 P. 447, and this has been held true even though the contract contains harsh terms. Bankers' Reserve Life Co. v. Rice, 99 Okla. 184, 226 P. 324.

The authorities are unlimited and uniform in holding that separation contracts entered into by husband and wife are valid and enforceable in the absence of fraud, overreaching, or unconscionable conduct. Numerous states have been called upon to determine whether a trial court had any power to modify or alter a separation agreement entered into between the parties, either to increase the allowance for the benefit of the

wife or to reduce it because of the husband's changed financial condition.

In Phillips v. Phillips (N. J.) 178 Atl. 265, paragraphs 7, 9, and 11 of the syllabus are as follows:

"Contracts between husband and wife, if fairly obtained, are enforceable in equity to extent that they are fair. * * *

"Fairness of husband's agreement to pay separate maintenance or alimony to wife must be determined in light of circumstances existing when contract was made, and change in husband's circumstances creating hardship or inability to perform is not valid defense to wife's suit for installments due under contract. * * *

"Contracts arise only from voluntary acts of parties, and court cannot make contract for them or revise their agreement."

In Cogswell v. Cogswell, 224 N. Y. S. 59, it was held that a separation agreement was valid and enforceable in all terms until set aside in its entirety by a court of equity by reason of fraud in the inception or some other reason sufficient to nullify the agreement as a whole. See, also, Winter v. Winter, 191 N. Y. 462, 84 N. E. 382, 16 L. R. A. (N. S.) 710; Stoddard v. Stoddard, 227 N. Y. 13, 124 N. E. 91.

Furthermore, in the Cogswell Case, supra, the court, in paragraph 6 of the syllabus, held that the powers of a court of equity could not be invoked to modify one provision of a separation agreement, while leaving the rest of such agreement unaffected. This statement is peculiarly applicable to the case at bar, in view of the fact defendant is attempting to avoid only that portion of the contract of separation relating to the amount to be paid per month to the plaintiff.

In Eschner v. Eschner (Va.) 131 S. E. 800, it was held that reduced financial circumstances is no ground for canceling a postnuptial contract by husband to pay an annuity to his wife. See, also, Richards v. Richards (Mass.) 169 N. E. 891.

The part of the judgment of the trial court holding that the contract could be modified at a future date will be treated as surplusage.

The judgment of the trial court is affirmed.

BAYLESS, C. J., WELCH, V. C. J., and RILEY, OSBORN, and DAVISON, JJ., concur. GIBSON and HURST, JJ., dissent. DANNER, J., absent.