## DOIG v. PALMER.

No. 6094. Decided June 5, 1939. (91 P. 2d 443.)

*Stewart, Stewart & Carter,* of Salt Lake City, for appellant.

*Critchlow & Critchlow,* of Salt Lake City, for respondent.

LARSON, Justice.

This is an appeal from a judgment of the District Court of Salt Lake County, and involves the construction of a "property settlement agreement" theretofore made in a divorce action. In 1929, plaintiff at Los Angeles, California, filed action for divorce against defendant, who then resided at Seattle, Washington. A stipulation or property agreement in writing was entered into between the parties and a decree of divorce duly entered. The stipulation recites in the final paragraph:

"This is intended to be a full, final and complete property settlement between the plaintiff and defendant."

After fixing the property adjustments as between the parties it provides:

"Defendant shall pay to plaintiff for the support and maintenance of two minor children of plaintiff and defendant the sum of Seventy ($70.00) Dollars per month,"

and then the paragraph which furnishes the bone of contention:

"Plaintiff shall have the custody and control of said minor children and defendant and his parents shall have the right to see said children at said home at all reasonable times."

The decree in the divorce action dissolved the marriage relationship, awarded the custody of the minor children to plaintiff, with the added phrase:

"the defendant, Robert E. A. Palmer, shall have the right to see and visit his said children at reasonable times."

It approved the property settlement between the parties but did not set forth its terms or decree any rights set forth in the agreement. In 1931, defendant remarried, made his home at Seattle, Washington, then at Boise, Idaho, and finally at Salt Lake City, where he resided at the time this action was commenced in 1936. In 1933, plaintiff married a Mr. Doig and took the children with her to Pittsburg, Pennsylvania, to live with her new husband. Defendant made his payments under the contract until and including March, 1934. He paid $35.00 for April and a like sum for May, 1934, and then refused to make further payments, assigning as reason therefor that plaintiff had taken the children from California to Pennsylvania. In 1936 plaintiff instituted this action to recover judgment for the payments in arrears under the contract. The defense is based upon the ground that in taking the children from California to Pennsylvania plaintiff had breached a material term of the contract, for which defendant rescinded and cancelled the contract and was no longer bound thereby. Any further facts will be referred to as they become pertinent in the course of the discussion. The trial court concluded that plaintiff had not breached the contract by taking the children to Pittsburg and entered judgment against defendant. He appeals.

The following questions are before us: (1) Does the "property settlement and agreement" made between the parties at the time of and in the divorce action require that the children be kept in California? (2) If question (1) be answered in the affirmative, was the breach thereof such as would justify defendant in terminating the contract? (3) If question (2) be answered in the affirmative, has de-

fendant waived or is he estopped to set up the breach as a reason why he should not make his payments under the contract? (4) a. Did the trial court err in overruling the objections made to plaintiff's complaint? b. Is the evidence sufficient to support findings of performance on the part of plaintiff? c. Did the court err in admitting evidence of waiver of performance on the part of plaintiff?

(1) Under the California practice and decisions, the stipulation and property settlement, having been approved by the court but its terms not being set forth in the decree, the rights of the parties thereunder rest upon the contract and not the decree, that is, they are contractual and not decreed rights and obligations. *Schnerr* v. *Schnerr*, 128 Cal. App. 363, 17 P. 2d 749; *Baxter* v. *Baxter*, 3 Cal. App. 2d 676, 40 P. 2d 536. The decree herein specifically awarded the custody of the children to plaintiff and provided that defendant should have a right of visitation at reasonable times. The decree is silent as to where the children must live, and as to whether they may be taken beyond the jurisdiction of the court. As far as the decree is concerned there is therefore no express obligation on plaintiff to keep the children within the jurisdiction of the California court.

We are not here concerned with the question as to what effect the decree may have on the contract were the two in conflict because we are satisfied that the contract itself does not require that the children be kept in California. The contract provides that the plaintiff shall have the custody and control of the children and this imposes upon her the duty of providing the children with a home, its comforts, its teachings and its influence, and that she be the mother in that home, the teacher and the guiding influence. It contemplates that she must keep the children with her, and should she desert them she would unquestionably be violating the contract as well as the decree. It was provided that she have the custody because it was thought that their best interests were so served. True, the agreement

provided that defendant would provide a certain home for plaintiff and the children in Los Angeles for a period of four years or longer subject to conditions. If at any time plaintiff remarried she and the children were to vacate the home so provided. Also, at any time after the lapse of four years, upon the death of Judson Palmer, uncle of defendant, plaintiff and the children were to vacate such home. It is evident plaintiff was under the necessity of working to maintain herself in providing a home for the children. Such work may well necessitate their living elsewhere. Whenever they left the home defendant was relieved from payment of the $50.00 per month rent therefor. The agreement also recognized plaintiff's right to, and the fact that she probably would remarry, because it provided that in the event she did remarry she should vacate the home defendant provided. He then was relieved from the payment of rent ($50 per month), but there was no change provided in the custody of the children or provision for their support upon the happening of such contingency. The fact that the agreement contains no provision that the children shall not be taken from California, coupled with the fact that in the event of plaintiff's remarriage there is no change contemplated in the custody of the children or provisions for their support, is strongly persuasive that the parties did not intend that the children must be kept in California.

Defendant's argument centers upon paragraph III of the contract reading:

"Plaintiff shall have the custody and control of said minor children and *defendant and his parents shall have the right to see said children at said home at all reasonable times.*" (Italics added.)

Defendant argues that this should be construed to require plaintiff to keep the children in Los Angeles for the convenience of defendant and his parents in visiting them. But defendant himself, at the time of the contract and for eight years thereafter was a non-resident of California. Under such construction, if plaintiff had taken the children

to Seattle, then to Boise, and thence to Salt Lake City, as defendant moved his residence from one place to the next so as to keep the children near their father for his convenience in visiting them instead of keeping them in Los Angeles, one thousand miles away, she would have been breaching the contract with regard to his right of visitation, and thus relieve him from the payments for their support. The phrase, *"at said home"* could only have been inserted to mean that visitations might be made where the children lived, instead of being required to see them in the park or upon the street, so the children could be enjoyed at their play.

Another persuasive fact is the construction placed upon the contract by the parties themselves. No question was raised until sometime after the children were taken to Pittsburg. Immediately after her marriage to Doig, plaintiff from Los Angeles wrote defendant, then living at Boise, advising him of her marriage and her intention to make her home and that of the children in Pennsylvania, and to forward future checks to her there. He replied by mail under date of June 3, 1932, as follows:

"A very good friend informed me of your step so your letter of the first did not come as much of a surprise.

"I certainly wish you happiness and the best of luck, I have heard you speak of your new husband in the past and from the send off you gave him I have every confidence that the change will be a happy one.

"It makes me feel very bad to have the children go so far away but I presume my chances of seeing them occasionally are as good one place as another. If you are going east by way of Ogden I would make every effort to see you and the children for a few minutes at the station. * * *

"Your instructions as to the checks will be followed."

He continued to make his payments throughout the year as required by the contract without objection or complaint. In November 1932, defendant wrote plaintiff at Pittsburg suggesting that the payments be reduced to $30 per month for the reasons that he had suffered a reduction in salary

due to the depression, and that he had remarried and had a wife and son to support. Receiving no satisfactory response to this suggestion, he in May 1933 again wrote her that since she would not give him a voluntary reduction he would make no further payments until the decree had been amended as to amount. Not until May, 1934, practically two years after the children were taken to Pittsburg, and after defendant was convinced plaintiff would not make a voluntary reduction in the payments, did he raise any question about the children not being in Los Angeles (he still lived in Salt Lake City, 750 miles from Los Angeles) and decided he would make no further payments until the children were taken back permanently to Los Angeles. It is very persuasive that it is not the added difficulties in visiting the children but the added burden of the $70 payments under the changed conditions of the parties, and the desire to force an alteration in the amount of payments rather than having the children in Los Angeles that galls the defendant. Defendant contends for a strict application and rigid construction of the contract. Granting such construction we must hold that it contains no requirements that the children be kept in California and no restriction on their being taken out of that state. It may well be that under the changed conditions with respect to both plaintiff and defendant, and also the children, since the agreement was made, defendant should be entitled to some decrease or modifications in his payments but that is not here for decision or action. We conclude that question (1) must be answered in the negative and the trial court did not err in concluding that plaintiff had not breached the contract of settlement.

This answer to question (1) renders a consideration or discussion of questions (2) and (3) unnecessary, so we come to a consideration of question (4), wherein defendant (appellant), (a) assails plaintiff's complaint both by demurrer and other timely objection. This assault is grounded upon the fact that plaintiff does not allege performance or excuse for non-performance of her

obligations under the contract. It is argued that under the contract each party assumes current and continuing concurrent obligations each of which is dependent on performance of another obligation by the other party. Defendant contends that the sole and only consideration for his promise to pay for the support of the children was the right of visitation at Los Angeles and that plaintiff does not plead that she has maintained inviolate this right for the defendant. What we have already said disposes of much of this argument but we may add that the contract was not primarily for the support of the children but was a property settlement between the plaintiff and defendant in lieu of the claims either may have against the other for alimony. It is so expressly declared in paragraphs VIII and IX of the contract. The primary and moving consideration was the settlement of property rights between them and claims which each might have against the other prior to the divorce. As incidents thereto, since divorce was contemplated, they provided for the custody and support of the children. The contract was set out in full as a part of the complaint and reveals upon its face that there were no obligations imposed upon the plaintiff as a condition precedent to plaintiff's obligations to pay. An examination of the contract shows the following provisions with respect to relationships or obligations between the parties: Plaintiff shall have the use of the house (Paragraph I); shall have the custody and control of children (Paragraph III); shall have as her sole and separate property the furniture and automobile subject to encumbrances (Paragraph IV). Defendant shall pay the rent on the house (Paragraph I); shall pay plaintiff $70 per month for support of children (Paragraph II); shall have the right to see the children (Paragraph III); shall pay all community debts (Paragraph V); shall pay attorney fees and costs ($150) (Paragraph VII). The only other provisions in the contract are that upon remarriage plaintiff's use of the premises terminates; that the parties release each other from all other

claims; and that the contract is a full, final and complete property settlement between the parties (Paragraphs VII, VIII, and IX).

There are no obligations imposed upon the plaintiff which she could plead she had performed or which must be done to lay a basis for defendant's duty to perform. There is nothing she is required to do; nothing to perform. The most that can be said is that he has rights with which she must not interfere, and such would be negative obligations on her part which it is not necessary to plead. One suing on a contract need not plead that he has not prohibited the other party from proceeding under the contract. The rulings on objections to plaintiff's complaint were not error.

What we have said disposes of propositions (b) and (c) as to the sufficiency of the evidence to support findings of performance, and as to whether the court erred in admitting evidence of waiver of performance since waiver becomes immaterial. Finding no substantial error in the assignments made, the judgment should be affirmed. Costs to Respondent.

Such is the order.

MOFFAT, C. J., and WOLFE, McDONOUGH, and PRATT, JJ., concur.