**MILLER v. MILLER.**
No. 2568.

Circuit Court of Appeals, Tenth Circuit.
March 5, 1943.

Rehearing Denied April 19, 1943.

John Ladner, of Tulsa, Okl. (Carl H. Livingston, of Tulsa, Okl., on the brief), for appellant.

A. F. Moss, of Tulsa, Okl. (Lloyd G. Owen, of Tulsa, Okl., on the brief), for appellee.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

The appellant, Elsie A. Miller, a resident of New Jersey, sued her former husband, a resident of Oklahoma, to recover arrearages and the liquidated value of an alleged separate maintenance agreement between the parties, alleging the requisite amount in controversy. The trial court sustained a motion to dismiss the petition, and entered judgment for the appellee on the grounds, (1) that the alleged contract was unenforceable because of its indefiniteness, vagueness, and uncertainty, and (2) the asserted right or claim had been previously adjudicated by a judgment between the same parties in the district court of Tulsa County, Oklahoma (affirmed Miller v. Miller, 186 Okl. 566, 99 P.2d 515, certiorari denied 311 U.S. 645, 61 S.Ct. 9, 85 L.Ed. 411), as a consequence of which she is barred and estopped by the former judgment.

The judgment of the trial court is based upon the allegations in the complaint, the attached exhibits, and pertinent proceedings in the district court of Tulsa County, of which, it was agreed, the court could take judicial knowledge. The same questions are presented here on the same record which discloses the following facts: The appellant and appellee were married in New York in 1911, and the appellee deserted the appellant in 1920. Soon after the separation, and on June 30, 1920, the parties as husband and wife entered into a written agreement, which recited the marriage, the birth of one child, Elsie Julia Miller, then four years of age, and the subsequent separation. The agreement further recited "the desire of the parties hereto to agree upon the provision to be made by the party of the first part (appellee) for the maintenance and support of the party of the second part (appellant) and child". Accordingly, it was agreed that the appellee would convey the home, together with all furnishings therein, free of mortgage indebtedness, to the appellant, and he further agreed to pay the appellant $50 weekly from July 1, 1920, to July 1, 1923, and she agreed to accept the same in full for all "alimony" for support and maintenance of herself and child until July 1, 1923. The contract in this respect was fully performed. It was further agreed, "That on or before June 1, 1923, the parties hereto would agree, if possible,

as to the provision to be made by the party of the first part for the maintenance and support of the party of the second part and her daughter, Elsie Julia Miller, subsequent to July 1, 1923".

On September 27, 1922, the appellant sued for divorce in the chancery court of New Jersey, obtained constructive service by publication upon the appellee, who at that time resided in Oklahoma and on May 2, 1923, was granted a decree nisi. On May 24, 1923, and before the divorce decree became final in the following November, the appellee addressed a letter to appellant in which he expressed an intention to remarry before the divorce became final, and asked appellant to assure him that he need not expect any "detrimental action" on her part should he decide to "take the step" prior to the six months period required under the laws of New Jersey. He further stated, "Commencing with July, I expect to increase my allowance to you and Elsie Julia from $216.00 a month, the present rate, to $250.00 a month, and I hope that no further legal matters will be raised which might prevent my being able to continue to send you this amount. This of course rests in your hands". On May 29, 1923, the appellant, through her solicitor, addressed a letter to the appellee in which she stated that she had no intention of doing anything to avoid the final decree of divorce, stating, "we might add in regard to the monthly payments, that while we had no definite arrangements when these payments were to begin, we thought they would start when the understanding was reached with your solicitor". Nothing further was said or done at that time concerning an agreement between the parties. The divorce became final on November 3, 1923, and the appellee continued monthly payments of $250 until June 1, 1932.

On August 28, 1925, apparently in answer to a request from the appellant for an additional allowance, he informed her by letter that it was impossible for him under the present conditions to increase the allowance, and that it would be necessary for her to budget the allowance so that she and Elsie Julia could live on the $3,000 per year ($250 monthly) which he had been sending them for their "joint maintenance". On May 4, 1932, the appellee advised the appellant that by reason of capital losses and increased family responsibilities, it would be necessary to reduce his monthly remittance by $25. On the following June 16th, he informed the appellant by letter that by reason of a salary reduction, a further revision of the budget was necessary, and commencing July first he was compelled to reduce his remittance to $200 monthly. Again on February 15, 1935, he informed her by letter that commencing April first "and until further notice", he would send $100 monthly for "Elsie Julia's maintenance". Accordingly the appellee made the following payments after June 1, 1932: For the month of June, 1932, $225; from July 1, 1932, to March 1, 1935, $200 monthly; for the month of March, 1935, $150; from April 1, 1935, to May 1, 1937, $100 monthly; for the month of May 1937, $67.74, after which no further payments were made.

On May 29, 1937, the appellant instituted an action in the district court of Tulsa County, Oklahoma, in which she alleged the marriage, the birth of the daughter, the separation, the separation agreement dated June 30, 1920, and the subsequent divorce. She attached the separation agreement and the letter from the appellee to the appellant under date of May 24, 1923, and the letter of her solicitor in response thereto dated May 29, 1923. She alleged that these letters supplemented and modified the original separation agreement, and as supplemented and modified constituted a binding agreement for alimony during the joint lives of the parties, when and only when approved by a court of competent jurisdiction. She pleaded the factum of the law of New Jersey as controlling the agreement, and alleged in detail the wealth, earnings, and earning capacity of the appellee; that she and her daughter were both in failing health, requiring constant medical service; that she had no means of support and was not physically capable of supporting herself or her daughter, and the daughter was incapable of earning a livelihood and was consequently dependent upon her. She alleged default in payment of the "alimony" under the alleged contract, for an amount calculated to be the difference between the amount received and $250 per month, until the date of the filing of the petition. She prayed for approval of the agreement and alimony in accordance therewith, together with such additional alimony and division of property deemed just and equitable. She further prayed for reasonable attorney's fee, and costs of the action. Appellee (defendant there) answered, denying that the New Jersey laws controlled the rights of the

parties, or that the letters attached to the appellant's petition constituted an enforceable contract of any character, and alleged further that considering the value of all his properties and his earnings at the time the divorce was granted in New Jersey, he had paid the appellant all alimony to which she was equitably entitled under the laws of Oklahoma or of New Jersey, and prayed that she be denied further relief. The state trial court found and concluded that, under the applicable laws of Oklahoma, the amounts heretofore paid to the appellant for the support and maintenance of herself and child constituted an equitable discharge of his duty to support and maintain his wife and child after divorce. This judgment was affirmed by the Supreme Court of Oklahoma, see Miller v. Miller, supra.

■ The alleged separation agreement between the parties was pleaded in the Oklahoma court as a valid agreement, subject to the approval of a court of competent jurisdiction. It had not and could not have been approved or disapproved by the New Jersey court granting the divorce, based upon constructive service. West v. West, 114 Okl. 279, 246 P. 599; Spradling v. Spradling, 74 Okl. 276, 181 P. 148. Consequently the appellant, deeming herself constrained by the laws of New Jersey and Oklahoma, presented the alleged agreement to the Oklahoma court having jurisdictional authority to make provision for support and maintenance of the innocent wife and child, and to that extent abrogate any pre-existing agreements in conflict with its equitable judgment. Wheeler v. Wheeler, 167 Okl. 598, 32 P.2d 305; McRoberts v. McRoberts, 177 Okl. 156, 57 P.2d 1175; Sobel v. Sobel, 99 N.J.Eq. 376, 132 A. 603; Greenberg v. Greenberg, 99 N.J.Eq. 461, 133 A. 768; Apfelbaum v. Apfelbaum, 111 N.J.Eq. 529, 162 A. 543, 84 A.L.R. 298; Second National Bank of Patterson v. Curie, 116 N.J.Eq. 101, 172 A. 560; Aioso v. Aioso, 119 N.J.Eq. 385, 183 A. 219; Phillips v. Phillips, 119 N.J.Eq. 462, 183 A. 220.

But she did not seek to recover on the contract, or to have the same declared a valid, binding, and subsisting agreement, except insofar as it constituted a "guide" and for the persuasive effect to which it

was legally entitled in the determination of the equitable issue of alimony incidental to the divorce, which the Oklahoma court undoubtedly had the equitable power and the duty to adjudge. See Miller v. Miller, supra, West v. West, supra; Wheeler v. Wheeler, supra. The action was definitely identified both in the trial and appellate courts of Oklahoma, as an action for alimony incidental to the New Jersey divorce, as distinguished from an action ex contractu to recover on the separation agreement now asserted in these proceedings. The validity or the enforceability of the now alleged separate maintenance agreement did not control the Oklahoma court in deciding whether the appellant was entitled to alimony. It could have, within the range of its discretion, awarded more or less, or none at all as it did. The Oklahoma appellate court clearly recognized the rights under the contract, and the right to an award of alimony, as not depending upon the same facts, or resting upon the same principles of law. Miller v. Miller, supra, 99 P.2d at page 518.

■ Irrespective of what may have been appellant's conception of the force and effect of New Jersey and Oklahoma law at the time she filed her suit for alimony in the Oklahoma state court, it is now well settled in New Jersey that a husband and wife (subject to restrictions and limitations not material here) may enter into a separation agreement providing for the settlement of their property rights, and court approval is not essential to its validity, although a divorce court is free to annul or modify the same in the exercise of its equitable jurisdiction in divorce proceedings. Buttlar v. Buttlar, 71 N.J.Eq. 671, 65 A. 485; Halstead v. Halstead, 74 N.J.Eq. 596, 70 A. 928; Corbin v. Mathews, 127 N.J. Eq. 121, 11 A.2d 603; Calame v. Calame, 25 N.J.Eq. 548; Phillips v. Phillips, supra. The same right is granted by statute in Oklahoma. 32 O.S.A. §§ 5, 6, 7. See also King v. King, 138 Okl. 40, 280 P. 271; Murphy v. McElroy, 185 Okl. 388, 92 P.2d 369; Seyler v. Seyler, 190 Okl. 253, 122 P. 2d 804; Elliott v. Dunham, Okl.Sup., 130 P.2d 534; Stark v. Stark, 185 Okl. 348, 91 P.2d 1064. And this seems to be the prevailing rule elsewhere.[1]

[1] Galusha v. Galusha, 138 N.Y. 272, 283, 33 N.E. 1062, 1064; Winter v. Winter, 191 N.Y. 462, 84 N.E. 382, 16 L.R.A., N.S., 710; Benesch v. Benesch, 173 N.Y. S. 629, 106 Misc. 395; Goldman v. Goldman, 282 N.Y. 296, 26 N.E.2d 265; Roberts v. Roberts, 83 Cal.App. 345, 256 P. 826, 828; Sanborn v. Sanborn, 3 Cal. App.2d 437, 39 P.2d 830; Gummerson v. Gummerson, 14 Cal.App.2d 450, 58 P.

■■ It is equally well established by the same authorities that a separation agreement, otherwise valid and enforceable, is not extinguished, but survives a subsequent divorce and alimony decree. And if presented to the divorce or alimony court, its validity and enforceability is adjudicated and its term superseded and annulled only to the extent of the conflict with the judgment of the divorce or alimony court, which cannot be hampered or circumscribed by the agreement of the parties touching a division of the property, or the award of alimony. Murphy v. McElroy, supra. Seyler v. Seyler, supra; Elliot v. Dunham, supra. See also footnote 1. If, however, it appears from the agreement and the conduct of the parties that such separation agreement was intended as a temporary expedient incidental to divorce, or for the purpose of dispensing with proof, and to evidence accord touching property rights in a divorce proceedings, it becomes extinguished by the judgment of the court when, and only when, it has served its manifest purpose. Finley v. Finley, 174 Okl. 457, 50 P.2d 643; McRoberts v. McRoberts, supra.

What then was the manifest purpose of the alleged contract? Did the parties intend that it should be submitted and approved by the divorce court, and as approved incorporated in and superseded by the divorce decree—obviously not. What was the purpose of the appellant when she submitted the alleged agreement to the alimony court in Oklahoma? She sought to have the same approved, and as approved superseded by the equitable judgment of the court. But the Oklahoma court, treating the action as one for alimony, merely considered the amount of money which the appellee had paid to the appellant, and based upon that proof, the court adjudged that appellant had been paid all to which she was equitably entitled under the applicable laws of Oklahoma. Its judgment did not purport to approve, disapprove, modify, annul, or supersede the alleged contract. On the other hand, it expressly refused to adjudicate the contractual rights of the parties under the alleged agreement, and by fair implication, we think, left the appellant to her remedy on the contract. Miller v. Miller, supra, 99 P.2d at page 520. See also Murphy v. McElroy, supra; Seyler v. Seyler, supra; Elliot v. Dunham, supra; Corbin v. Mathews, supra.

■■ If the alleged separation contract survives the divorce and alimony proceedings as an unadjudicated right, it follows that the appellant is neither barred nor estopped to assert such right in this suit. Cressler v. Brown, 79 Okl. 170, 192 P. 417; Factor Oil Company v. Brydia, 184 Okl. 113, 85 P.2d 311; Hine v. Board of County Commissioners, 188 Okl. 260, 108 P.2d 112; Langston City v. Gustin, Okl.Sup., 127 P. 2d 197; United States v. Sinclair Refining Co., 10 Cir., 126 F.2d 827; Uphoff v. Meier, 184 Okl. 378, 87 P.2d 960; Phillips v. Phillips, 119 N.J.Eq. 497, 183 A. 222; Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195; Cf. Bates v. Bodie, 245 U. S. 520, 38 S.Ct. 182, 62 L.Ed. 444, L.R.A. 1918C, 355. Furthermore, the remedy afforded for alimony, incidental to divorce, and a remedy upon a separate maintenance agreement, independent of the divorce and alimony proceedings, are not inconsistent but concurrent remedies, and a defaulting party may be bound by both the decree for alimony and the agreement. Satisfaction of the decree, however, should be applied upon the obligation under the separation agreement. Newell v. Newell, 28 Cal.App. 784, 154 P. 32; Roberts v. Roberts, 83 Cal. App. 345, 256 P. 826; Robertson v. Robertson, 34 Cal.App.2d 113, 93 P.2d 175; Makzoume v. Makzoume, 50 Cal.App.2d 229, 123 P.2d 72; Henry v. Herrington, 193 N.Y. 218, 86 N.E. 29, 20 L.R.A.,N.S., 249. Cf. United States v. Oregon Lumber Company, 260 U.S. 290, 43 S.Ct. 100, 67 L.Ed. 261. We conclude that the appellant is free to assert the alleged contract here, and her recovery is dependent upon its existence, validity and duration.

According to the contentions of the appellee, the correspondence and conduct of

---

2d 394; Robertson v. Robertson, 34 Cal. App.2d 113, 93 P.2d 175; Makzoume v. Makzoume, 50 Cal.App.2d 229, 123 P.2d 72; Doig v. Palmer, 97 Utah 150, 91 P. 2d 443; Ex parte Lazar, 37 Cal.App.2d 327, 99 P.2d 342; Lazar v. Superior Court, 16 Cal.2d 617, 107 P.2d 249; Dungan v. Dungan, 36 Ohio App. 427, 173 N. E. 208; Palmer v. Fagerlin, 163 Mich.

345, 128 N.W. 207; West v. West, 241 Mich. 679, 217 N.W. 924; Hoskins v. Hoskins, 201 Ky. 208, 256 S.W. 1; Middleton v. Middleton, 207 Ky. 508, 269 S. W. 552; Young v. Thompson, 220 Mo. App. 1266, 290 S.W. 85; Lindey, Separation Agreements, p. 385; Schouler, Marriage, Divorce, Separation and Domestic Relations, § 1304.

the parties do not constitute a contract, if so, it is at most one terminable at will. The appellant contends that the original contract, as supplemented and modified by the subsequent correspondence, constitutes a valid separate maintenance agreement providing for the support and maintenance of herself and child so long as they lived apart, or for the joint lives of the parties. Alternatively she argues that, although not so stipulated, the amount provided to be paid was to be apportioned equally between herself and the child, and on the majority of the child, one-half of the amount was to be paid to her for the joint lives of the parties. She further argues that in any event, if the contract is terminable at will, necessary notice was not given until the child had reached majority, at which time he was in arrears on the contract in the amount of $5,455.66.

▪ When the parties separated on June 1, 1920, the wife retained custody of their minor child. The original agreement (June 30, 1920) was in recognition of the husband's inescapable moral and legal obligation to support his wife and child during separation. His obligation under the contract terminated on July 1, 1923, but the appellee no doubt realized that his moral and legal obligation to support his wife and child did not terminate with the agreement, if they continued to live apart, and it is evident that at that time he intended the separation to be permanent. This much is explicit from their expressed intention to agree, if possible, for the support and maintenance of the wife and child subsequent to July 1, 1923. Consequently, on May 24, 1923, before the original agreement terminated on the following July first, appellee informed the appellant in writing of his intention to remarry before the finality of the divorce, expressing the hope that nothing would happen to prevent the divorce from becoming final. To insure the success of his plans, and to discharge his manifest obligations to permanently provide for the support and maintenance of his wife and child, he informed appellant that commencing July 1, 1923, he would increase his allowance from $216 monthly ($50 weekly), "the present rate", to $250 monthly. When considered in the light of his attendant legal obligations, and his expressed intentions, we think the letter of May 24, 1923, constituted an offer to discharge his obligation by the payment of $250 monthly for the support of his wife and child, which, if accepted, resulted in an agreement. Her reply to his letter, coupled with the finality of the divorce, and the acceptance of the tendered payments of $250 monthly, in satisfaction of his obligation, for a period of nine years without further inquiry or comment, indicates quite clearly a manifestation of assent to the offer—a meeting of the minds, hence an agreement supported by valid and sufficient consideration. Restatement on Contracts, § 19–25, 29, 32; 17 C.J.S., Contracts, §§ 30, 31; American Lumber & Mfg. Company v. Atlantic Mill & Lumber Company, 3 Cir., 290 F. 632; General Paint Corporation v. Kramer, 10 Cir., 57 F.2d 698. Whether considered as supplementary to the original, or as a new and independent agreement, the practical effect is the same. The subsequent correspondence was between the same parties, about the same subject matter, and in furtherance of a continuing obligation.

▪ But how long was the agreement to endure? Clearly, no limitation is expressed in the agreement, and it must be determined by necessary implication. It is a fundamental and well recognized rule that in construing contracts, courts must look not only to the specific language employed, but also to the subject matter contracted about, the relationship of the parties, the circumstances surrounding the transaction, or in other words place themselves in the same position the parties occupied when the contract was entered into, and view the terms and intent of the agreement in the same light in which the parties did when the same was formulated and accepted. Robson v. Mississippi River Logging Company, C.C., 43 F. 364, affirmed 8 Cir., 69 F. 773; New York Casualty Company v. Sinclair Refining Company, 10 Cir., 108 F.2d 65, 69; Peebles v. Prudential Insurance Company, 6 Cir., 110 F. 2d 76, 78.

▪▪ If no period of duration is specified in a contract, and none can be inferred from its nature and subject matter, the law infers that the parties intended such agreement to be terminable at the pleasure of either party upon reasonable notice. If, however, a period of duration can be fairly implied from the nature of the contract, its subject matter, and the relationship of the parties, the contract is not terminable at the pleasure of either party and the court will give effect to the manifest intent of the parties. 17 C.J.S., Contracts, § 398;

Robson v. Mississippi River Logging Company, supra; McKell v. Chesapeake & O. Ry. Company, 6 Cir., 175 F. 321, 329, 20 Ann.Cas. 1097; Rossmassler v. Spielberger, 270 Pa. 30, 112 A. 876, 880. Otherwise stated, " * * * where no limitation is expressed in the agreement, neither party can terminate it without the consent of the other unless the contract itself indicates with sufficient clearness that the parties must have intended some other termination * * *". American Jurisprudence, Vol. 12, § 305. We will give to the agreement a construction which is reasonable under the attendant circumstances, but we will not give it a duration beyond the manifest purpose and object for which it was intended. Williston on Contracts, § 38. What then was the manifest intention of the parties when considered in the light of the circumstances surrounding its consummation? The husband was separated from his wife and minor child; we have seen that he intended the separation to be permanent; we have also seen that he recognized his obligation and intended to discharge it by the payment of a stipulated amount monthly, which the wife accepted for a period of nine years. In these circumstances, it cannot be said that the parties intended the contract to endure only until a final divorce had been granted, or for one month, or one year thereafter. The parties undoubtedly intended the arrangement to have a permanent duration. Any other intention is repelled by the relationship of the parties and the husband's attendant obligations, as well as his conduct in relation thereto. It seems plain, therefore, that the contract was not terminable at will or the pleasure of the appellee. We cannot say in these circumstances that the payments made were purely voluntary, or to satisfy a purely moral obligation.

Carl v. Carl, Sup., 166 N.Y.S. 961, relied upon by the appellee, is based upon the now antiquated doctrine which looked with disfavor upon permanent separation agreements. The court there held the separation agreement valid only until the husband offered to resume the marital status. It does not aid us in a consideration of the present question, which is controlled by a different philosophy of the law concerning separation agreements. Cf. Winter v. Winter, 191 N.Y. 462, 84 N.E. 382, 16 L.R.A.,N.S., 710; Corbin v. Mathews, supra. Likewise, Fitch v. Tyler, 105 Cal.App. 306, 288 P. 74, while recognizing statutory sanction of separation agreements in California, based its decision on the statutory requirement that separation agreements must not only be in writing, but also signed by both parties. The court there refused to enforce a separation agreement against the estate of the husband. We think the case must be considered in the light of many subsequent California decisions on this question. (See footnote 1).

■ ■ We think the contract by its nature necessarily implies a permanent duration, but that does not justify the further implication that it shall endure for the joint lives of the parties. Lifetime obligations are not readily incurred, nor will they be lightly inferred from the conduct of the parties. They must be sustained by expressed stipulations, or by implications too strong for any other reasonable construction. Williston on Contracts, § 38; 17 C.J. S., Contracts, § 398; Paisley v. Lucas, 346 Mo. 827, 143 S.W.2d 262, 270; Holt v. St. Louis Union Trust Company, 4 Cir., 52 F.2d 1068. Cf. Buttlar v. Buttlar, 71 N.J. Eq. 671, 65 A. 485, 487. We do not think the underlying obligations or the conduct of the parties justify any such construction here.

Furthermore, the agreement which the parties have fashioned is not by its terms, or by fair implication, separable or divisible as between the wife and daughter. The payments made were for the joint maintenance and support of the wife and daughter. We cannot infer an intention of the husband to pay the wife all that he had promised to pay the wife and daughter after the daughter reached majority, and he no longer sustained an obligation to her. Until, however, the daughter reached her majority on May 16, 1937, and if she was supported by her mother, the husband owed an obligation to them which he offered to discharge by payment of $250 monthly, and which the wife accepted in satisfaction thereof. To this extent, and for this period, the agreement can be fairly construed as definite in time, amount and purpose. Until this date (May 16, 1937), the appellee made regular monthly payments. Because of his expressed financial inability to pay this amount, he reduced the payments from time to time after June 1, 1932, but this did not relieve him of his contractual obligation which he had assumed. There was no consideration for a modification of the agreement to pay $250 monthly, which we hold was consummated between the parties.

590

■ We conclude that when fairly and reasonably construed, the agreement obligated the appellee to pay the appellant $250 monthly during the minority of the daughter, or until May 16, 1937. Beyond that period, we are unable to sustain a valid agreement based upon the intentions of the parties, or the objects and purposes of the agreement. The judgment is reversed with directions to proceed in accordance with the views herein expressed.

Rehearing denied: PHILLIPS, Circuit Judge, dissenting.